EMMA J. SIMPSON ET AL. v. J. W. EDENS ET AL.

Delivered June 15, 1896.

**1. Parol Evidence as to Execution of Deed—Admissions Against Interest.**
Parol evidence by a party to the suit of the execution and contents of a lost deed under which the land is claimed by the adverse party, the contents of the deed being in dispute, is relevant to the issue in trespass to try title, and is also in the nature of admissions against interest.

**2. Power of Attorney by Feme Sole—Revocation by Marriage.**
A power of attorney of a feme sole to sell land is revoked by her subsequent marriage; and it is immaterial, it seems, that a subsequent purchaser of the land under the power did not know of such revocation at the time he bought.

**3. Same—Revocation by Subsequent Deed.**
A woman's power of attorney to sell her land is revoked by her subsequent deed of the land to the party to whom the power is made, although such deed be defective by reason of an insufficient certificate of her separate acknowledgment thereto as a married woman.

**4. Deed—Secondary Evidence Where Lost—Certified Copy.**
Testimonial proof is admissible to establish a lost deed, without the necessity of resort to a certified copy of the record of the deed, which itself is only secondary evidence. In this case the party offering the proof claimed that the record was not correctly made, or if so, that it was of a forged deed, differing from the true one.

**5. Same—Parol Proof of Certificate of Separate Acknowledgment.**

The certificate of the separate acknowledgment of a married woman, forming part of a lost deed, may also, as to both its execution and contents, be proved by parol. For evidence held to show that a lost deed was duly acknowledged by a married woman and proper certificate thereof made, see the opinion.

**6. Married Woman's Deed—Defective Certificate of Acknowledgment.**

A married woman's deed of land is defective where the certificate of her separate acknowledgment fails to state that the officer explained the deed to her.

**7. Deed by Attorney in Fact.**

A deed by an attorney in fact, duly authorized by written power of attorney, will operate to convey the interest of the principal, where such is the intention, although it does not in express terms purport to do so, or to be made by virtue of the power.

**8. Charge of Court—Estoppel to Complain of.**

A party can not be heard to complain of a given proposition in the general charge of the court where he requested a special charge embodying the same proposition, though the special charge was not given.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*H. L. Stone* and *Frost & Blanding*, for appellants.—1. The law charged defendants with notice of the marriage of Martha Theo. Kyle to S. H. Hardeman and of the revocation thereby of her power of attorney made while feme sole. Purchasers from her agent after her marriage cannot be held to be·innocent purchasers. Judson v. Sierra, 22 Texas, 370; 1 Am. & Eng. Ency. of Law, 448.

2. Parol testimony is not admissible to prove, to correct, amend or reform the certificate of acknowledgment of a married woman to a deed conveying her separate property. Elwood v. Kloek, 13 Barb., 50; Williams v. Soutter, 55 Ill., 130; Willis v. Gattman, 53 Miss., 721; Looney v. Adamson, 48 Texas, 621; Norton v. Davis, 83 Texas, 32.

3. If the testimony compained of was offered for the purpose of proving the existence of some other deed made by Mrs. Hardeman and Mrs. Simpson and their husbands to W. H. Harris than the deed which appeared of record, then such testimony was inadmissable to furnish a basis for the presumption that a certificate required by law to divest plaintiffs of their title was actually made by the officer who took their acknowledgment.

4. The entire testimony introduced showed that Mrs. Simpson and Mrs. Hardeman both joined by their husbands, joined in the signing of a deed attempting thereby to convey the land in controversy to their brother, W. H. Harris, at a date of about two years after they made the powers of attorney to him. Such acts revoked the powers of attorney previously made by them as a matter of law. Edens v. Simpson, 17 S. W. Rep., 788.

5. The court erred in that part of the general charge of the court which submitted to the jury the issue whether the deed to W. H. Harris, the record copy of which was read to the jury in evidence, was in fact executed as required by law to render the same sufficient to pass the title of Mrs. Simpson and Hardeman to their interest in the land in controversy, having reference both to the performance of the duties of

the officer in taking the acknowledgment as well as to the fact of the actual making of the proper certificate of the officer, for the reason, that the only proper evidence before the jury respecting the deed mentioned, was the record itself, which was an examined and official certified copy of the original deed and certificate thereto which should have been construed by the court and the nature and effect thereof stated to the jury, such examined copy being the best secondary evidence of the original instrument and of its contents. Harvey v. Thorpe, 28 Ala., 250 (s. c. 65 Am. Dec., 346); Dorsey v. Gassaway, 3 Am. Dec., 557; Sisson v. Donnelly, 7 Vroom (36 N. J. Law., 437); Farrar v. Fessenden, 39 N. H., 268; McGruder v. Bank, 9 Wheat., 204.

6. The validity of a married woman's deed conveying her separate real estate depends not only upon a proper acknowledgment of the execution of such deed, but also upon a proper certificate of acknowledgment being attached thereto by the officer taking said acknowledgment. Webb, Record of Title, secs. 103-107.

*J. J. McClellan, Croft & Croft* and *R. S. Neblett,* for appellees.—1. There was no error in admitting the testimony of J. W. Edens. It was admissible under two issues in the case; (1) Mrs. Simpson being a party to the suit, her statements and declarations against her interest were admissible without any predicate laid to contradict her. (2) The testimony tended to establish, first, the issue that the power of attorney executed by Mrs. Simpson to W. H. Harris was not revoked by any deed she executed to W. H. Harris; and, second, to establish the fact that Mrs. Simpson had conveyed her interest to John R. Smith, whether through a power of attorney to W. H. Harris or by a deed direct to John R. Smith was a question for the jury to decide. Keesey v. Old, 82 Texas, 22; Jordon v. Robson, 27 Texas, 612.

2. There was no injury done appellants by permitting the witnesses to testify that they did not know that Martha Theo. Kyle, after the execution of her power of attorney in 1867 to Wm. H. Harris, married prior to the time Wm. H. Harris conveyed to John R. Smith. Such testimony was admissible upon the question of improvements in good faith. Church v. Wagoner, 78 Texas, 200.

3. The execution of a deed by a married woman, so as to convey her interest in real estate, including her privy examination, the explanation of the instrument by the officer, her acknowledgment and declaration, and the certificate of the officer are all matters that can be shown by parol and circumstantial evidence, and there was no error on the part of the court in admitting the evidence complained of in the third assignment of error, because such evidence tended to show the execution of deed by Mrs. Hardeman and husband to W. H. Harris and the officer's certificate thereto in form and manner sufficient to pass her interest in the property in controversy. Crain v. Huntington, 81 Texas, 614; Daniels v. Cheekmore, 27 S. W. Rep., 148; Little v. Bounds, 75 Texas, 316; Blanton v. Ray, 66 Texas, 61; Overrand v. Menzer, 83

Texas, 130; Johnson v. Layford, 29 S. W. Rep., 57; Newby v. Hallman, 43 Texas, 314.

4. There was no error in instructing the jury that if W. H. Harris, in making the deed to John R. Smith in October, 1869, and John R. Smith in receiving and accepting the deed, intended the same to be a conveyance under the powers of attorney executed by Mrs. Simpson and Mrs. Hardeman in 1867, then the interest would pass to John R. Smith, whether so expressed in the deed or not. Edens v. Simpson, 17 S. W. Rep., 788; Hough v. Hill, 47 Texas, 153; Link v. Page, 72 Texas, 592.

5. It was a question for the jury to determine, whether or not either Mrs. Hardeman and Mrs. Simpson had executed a deed to W. H. Harris, and in determining that question they were not bound or concluded by the certified copy of a deed purporting to have been executed by such parties, to Harris in 1869. The original deed not being before the jury and there being no copy of a properly recorded instrument, all the evidence was secondary. Hayden v. Moffett, 74 Texas, 647.

6. Under the proposition that the proof was sufficient to sustain the finding of the jury that Mrs. Hardeman conveyed her interest to W. H. Harris, we cite Crain v. Huntington, 81 Texas, 614; Daniels v. Cheekmoore, 27 S. W. Rep., 148; Little v. Bounds, 75 Texas, 316; Blanton v. Ray, 66 Texas, 61; Overrand v. Menzer, 83 Texas, 130; Johnson v. Layford, 29 S. W. Rep.. 57; Newby v. Hottman, 43 Texas, 314.

FINLEY, ASSOCIATE JUSTICE.—The statement of the case as made in appellees' brief is sufficiently full and accurate to present the questions involved, and is here given: In 1890, Emma J. Simpson instituted suit against part of the appellees, to recover an undivided interest of one-tenth in 3000 acres of the Enoch Fryar league, situated in Navarro County. In 1894, the heirs of Martha Theo. Kyle, together with Emma J. Simpson, instituted suit against all of appellees, to recover an undivided interest of two-tenths of 3000 acres of the Enoch Fryar survey in Navarro County. The two suits, upon motion, were consolidated. H. L. Stone intervened in the consolidated case, claiming a one-half interest in the recovery of the plaintiffs, the heirs of Mrs. Hardeman and Mrs. Simpson. The suit was an ordinary one of trespass to try title, the petition not disclosing any particular title. The defenses were presented under the general denial and the statute of limitations of three, five and ten years. On the trial of the case it was admitted that appellees L. Q. White, John Pickett, Texas Loan Agency, John Britton, M. E. Dunn and Jas. Casgrove, were entitled to recover, and it is admitted that defendant Mr. Vance owns 158 acres in controversy.

Appellant's proved that W. H. Harris, Sr., and his wife owned at one time the 3000 acres involved; that W. H. Harris died leaving his wife surviving, and three children—W. H. Harris, Jr., J. B. Harris and Francis A. Smith. Mrs. Harris married Kyle, and by him had two children, Emma J. Kyle, the plaintiff, who married A. I. Simpson, and Martha Theo Kyle, who married Hardeman, and whose children were plaintiffs below, and are appellants here. The interests of W. H. Harris, Jr.,

J. B. Harris and Francis A. Smith in the 3000 acres were one-third of one-half each and one-fifth of one-half each. To show that defendants claimed from a common source with plaintiffs, they, plaintiffs, introduced a certified copy of a deed purporting to have been executed by Emma J. Simpson and husband, S. H. Hardeman, and Martha Theo. Hardeman and J. B. Harris, to W. H. Harris, conveying their interests in the 3000 acres of the Enoch Fryar league of land. This deed, as shown by the certified copy, was defective, in that it failed to show that the officer taking the acknowledgment of the married women explained the instrument to them.

All of the defendants deraigned title from John R. Smith and his wife, Francis A. Smith, the said Francis A. Smith being one of the heirs of W. H. Harris, Sr., and a half sister to the plaintiff; and on the trial of the case under the issue of not guilty, they sought to show that the interest of Mrs. Simpson and Mrs. Hardeman had passed, either directly to W. H. Harris and from him to John R. Smith, or had passed from Mrs. Simpson to John R. Smith prior to their purchase from John R. Smith. Two powers of attorney were introduced, bearing date 1867; one from Martha Theo. Kyle and J. B. Harris to W. H. Harris, the other from Emma J. Simpson and husband, A. I. Simpson, to W. H. Harris. These powers authorized W. H. Harris, Jr., to convey and make deeds to the interests of Mrs. Simpson, J. B. Harris and Mrs. Hardeman in the Enoch Fryar survey of land in Navarro County. W. H. Harris, on October 25, 1869, conveyed to Smith 1843 acres. It was shown that Mrs. Hardeman, who was Martha Theo. Kyle, after the execution of the power of attorney by her in 1867, married February, 1868, and the court instructed the jury that the marriage revoked the power of attorney executed by her to W. H. Harris, and that thereafter W. H. Harris could not convey, under such power of attorney, the interest of Mrs. Hardeman.

The plaintiffs sought to show that the power of attorney executed by Mrs. Simpson and her husband, A. I. Simpson, to W. H. Harris, in 1867; was revoked by a deed executed by them to W. H. Harris, which was defectively acknowledged, but sufficient to revoke the power of attorney, and the court upon that issue, instructed the jury that if the power of attorney was revoked by deed defectively executed, then W. H. Harris could not convey the interest of Mrs. Simpson under such power of attorney. The court further instructed the jury that if the power of attorney executed by Mrs. Simpson to W. H. Harris in 1867 was not revoked, and W. H. Harris intended by the deed executed to John R. Smith in October, 1869, to pass the interest of Mrs. Simpson, then such interest would pass to John R. Smith, whether it was so expressed in the deed or not. The evidence as to whether or not the power of attorney executed by Mrs. Simpson to W. H. Harris was revoked prior to the conveyance by Harris to Smith, was conflicting, and the evidence as to whether or not W. H. Harris intended by the deed he executed to John R. Smith, to convey the interest of Mrs. Simpson,

was circumstantial. Under the issues thus made by the pleadings and the evidence, the jury found for the defendants below, and the case comes here by appeal.

1. The first assignment of error is directed against the admission of the testimony of J. W. Edens as to statements of Mr. and Mrs. Simpson. The testimony objected to, as recited in the bill of exceptions, is as follows: "That directly after the institution of this suit he went to Nacogdoches County and saw A. I. Simpson and Emma J. Simpson; had a talk with them; that A. I. Simpson said that he had no recollection of having made a deed with his wife conveying her interest in the Fryar league to W. H. Harris, but his impression was that they had sold it to John R. Smith; that he showed A. I. Simpson a copy of the record of the deed purporting to have been made by him and his wife, S. H. Hardeman and wife and J. B. Harris to Wm. H. Harris, and A. I. Simpson at once said the deed was a forgery; that Simpson then went out of the house, and Mrs. Simpson said she had sold the land to John R. Smith, and her deed to John R. Smith ought to be of record; witness told her he could find no such deed on record; she then told him that the deed to the Taylor league probably included her interest in the Fryar league; that they, she and her husband, had made a heap of deeds, and that her husband in claiming that the deed to W. H. Harris was a forgery, might be talking too fast; that they might have made a deed to W. H. Harris; that she thought herself she had made no deed to him conveying her interest to him, but that it had been sold and conveyed to John R. Smith."

This testimony was objected to by the plaintiffs and intervenor on the grounds: (1) that it was immaterial; (2) no predicate had been laid for the impeachment of Mr. Simpson's testimony; (3) no plea of forgery of the deed from the heirs of Harris to Wm. H. Harris, as it appears of record, had been filed; (4) the defective certificate to the deed as recorded cannot be amended or reformed by parol testimony, nor by proof of circumstances resting in parol.

The only legal proposition urged in appellants' brief in opposition to this evidence is, that if it was intended to impeach the testimony of Mrs. Simpson, no predicate had been laid for that purpose.

Mrs. Simpson was a party to the suit; the evidence consisted of statements made by her and her husband bearing directly upon the issues involved, and was admissible as independent evidence in the nature of admissions of a party against interest. Keesy v. Old, 82 Texas, 25.

2. The second assignment complains that defendants were allowed to testify that they did not know of the marriage of Martha Theo. Kyle to S. H. Hardeman, after she executed the power of attorney to W. H. Harris.

The proposition urged is, that the law charged them with notice of such marriage, that the marriage revoked the power of attorney pre-

viously executed, and they could not be innocent purchasers under such revoked power.

The appellees contend that in the admission of this evidence there was no injury to appellants. They urge that the evidence was admitted under the plea of improvements in good faith, and the jury having found for defendants on the issue of title, the issue of improvements is not involved upon this appeal.

It is sufficient to say as to this contention, that the bill of exceptions recites that the evidence was admitted for the declared purpose of showing that they were innocent purchasers holding under the deed made by W. H. Harris.

They also insist that the effect of the evidence was controlled by the charge of the court. The charge of the court does not submit to the jury the issue of innocent purchaser, but expressly tells the jury to find for the plaintiffs, unless they find that plaintiffs have parted with their title, or unless the plaintiffs' right to recover is barred by limitation. The court also told the jury that the marriage of Martha Theo. Kyle revoked the power of attorney given by her to W. H. Harris, and that the deed executed by Harris subsequent to such marriage would not pass the title. Considering the manner in which the case was presented by the court to the jury, we cannot see how the jury could have attached any importance to this evidence except upon the issue of improvements in good faith, and as they settled the issue of title in favor of the defendants, the evidence certainly had no effect with the jury.

3. The third assignment is based upon the action of the court in permitting to be read in evidence the depositions of S. H. Hardeman, to the effect that he and his wife Martha Theo. Hardeman sold to Wm. H. Harris his wife's interest in the Enoch Fryar league of land, and were paid for it. That when the deed was signed his wife was sick in bed, and at her request he signed her name to the deed and she made her mark to it. That he then left the room, leaving the officer—the County Clerk of Nacogdoches County—with her for the purpose of taking her acknowledgment and explaining the deed to her. Also the depositions of B. F. Hardeman, that he signed the deed as a witness while in the room where Mrs. Hardeman was, and the County Clerk was there for the purpose of taking Mrs. Hardeman's acknowledgment to the deed.

The objections offered to the evidence were: (1) Because if offered for the purpose of correcting or reforming the certificate to the instrument which was of record and had been identified' as the record of the deed which was signed by Mrs. Hardeman, the testimony was not the best evidence of the acts of the officer, or of the certificate he made; that in the absence of the original the record was the next best evidence of the fact that a certificate was made by the officer, and the form and contents thereof, and that it could not be affected, amended or reformed by parol evidence, and defendants' right to make such proof is barred by the statute of limitation; (2) If for the purpose of proving the exist-

ence of some other deed made by Mrs. Hardeman and her husband to Wm. H. Harris than that which appeared of record, that the proof of such conveyance as testified to by said witness was immaterial and could not furnish a basis for the presumption that a certificate required by law to divest Mrs. Hardeman of her title was actually made by the officer taking her acknowledgment. Said testimony was calculated to confuse and mislead the jury, and did have the effect of confusing and misleading the jury in their verdict.

Previous to the introduction of this evidence, appellants had put in evidence for the purpose of showing a common source of title, a certified copy of a deed purporting to have been executed by Mrs. Simpson and husband, Mrs. Hardeman and her husband, and J. B. Harris, to W. H. Harris, conveying their interests in the land in controversy. This deed appeared to be defectively executed, in that the certificate of acknowledgment failed to show that the officer explained the deed to the married women. Appellees did not rely upon this deed; they did not offer the original nor a copy thereof in evidence. They laid the proper predicate for introducing secondary evidence of a deed executed by the same parties, upon the same date, and to the same purport and effect. It is clear that the evidence was not offered for the purpose of correcting a defective acknowledgment; the pleadings presented no such issue, and no relief of that character was asked. The evidence was offered for the obvious purpose of establishing, by secondary evidence, a conveyance of the land in controversy, the predicate for such testimony having been laid by showing the loss, search and failure to find such deed.

Where the proper predicate is laid for the introduction of secondary evidence to establish a deed as a link in a chain of title, parol testimony is admissible for that purpose. It is not necessary to the admission of such testimony, that it be first shown that there is no existing record of the deed sought to be proven. The record would only be secondary evidence itself, and though it were known to exist, we do not think the party would be compelled to use it as evidence in preference to parol evidence of the existence and contents of the deed.

The certificate of acknowledgment, in conformity with the statute, is necessary to the validity of a deed of a married woman, and is therefore, in an essential sense a part of the deed. Such certificate, its existence and contents, may be proved in the same manner in which the deed proper may be proven. Crain v. Huntington, 81 Texas, 614; Daniels v. Checkmore, 27 S. W. Rep., 148; Little v. Bounds, 75 Texas, 316; Blanton v. Ray, 66 Texas, 61; Overrand v. Menzer, 83 Texas, 130; Johnson v. Layford, 29 S. W. Rep., 57; Newby v. Hullman, 43 Texas, 14. The evidence was properly admitted.

4. The following portion of the charge of the court is made the basis of several assignments of error, towit: "As to the first question, you are instructed that there has been introduced a power of attorney from Mrs. Emma J. Simpson joined by her husband, also a power of attorney

from Theo. M. Kyle, afterwards Mrs. Hardeman, each to W. H. Harris, Jr., authorizing him to sell their interest in the Fryar league.

"Now the defendants claim that the deed from W. H. Harris to J. R. Smith in October, 1869, was intended between the parties thereto, to be a conveyance by Harris and under the said powers of attorney, while the plaintiffs claim that it was not so intended by said parties (Harris and Smith), and that it was intended and understood at the time that said deed was only in said Harris' own right, and conveyed only his own interest. Again, plaintiffs claim that said powers of attorney were revoked before said deed from Harris to Smith—1st. As to Theo. M. Kyle, because she had married after giving said power of attorney, and before the deed was executed. If this is so the power was revoked as to her. 2d. As to both Theo. M. Kyle (afterward Hardeman) and Emma J. Simpson, because they, joined by their husbands, executed a deed to said Harris to the land in question, before the deed from Harris to Smith. If this is true the power of attorney as to both of them was revoked, even though the deed executed was insufficient to pass their title because of insufficient certificate of the officer taking the acknowledgment.

"If then, the power of attorney of Theo. M. Kyle (afterwards Mrs. Hardeman) was revoked by her marriage, or by a subsequent deed, as explained, then you cannot find for the defendants as against her heirs, Mrs. McClure and Nola and Hunt Hardeman, upon the ground that her interest passed under the power of attorney by the deed of Harris to Smith, and if the power of attorney from Mrs. Simpson was revoked by deed as explained, then her interest did not pass by the deed of Harris to Smith; and further, even if these powers of attorney were not revoked as herein explained, still 'if it was not intended between Harris and Smith that Harris should convey under the power of attorney, but was understood between them that he was only conveying his interest, then no interest of Mrs. Simpson, or of Theo. M. Kyle passed by the deed of Harris to Smith. If on the other hand, the power of Theo. M. Kyle was not revoked, and Harris was intending to convey under that power, then her interest passed by Harris' deed, and you should find for defendants as against her heirs, the plaintiffs, Mrs. McClure and Nola and Hunt Hardeman; and if Mrs. Simpson's power of attorney was not revoked, that is, if she made no deed to Harris, and Harris was intending to convey under that power, then her interest passed by the deed of Harris to Smith, and as against her you should find for the defendants."

It is urged that this charge is objectionable, for the reason that the evidence is positive and without conflict, that Martha Theo. Kyle executed a power of attorney while a feme sole to W. H. Harris, on October 9, 1867, and that she married on February 28, 1868—more than one year prior to the execution of the deed from Harris to Smith.

This proposition is true. The evidence was, without conflict, to the effect that the power of attorney of Martha Theo. Kyle was executed

while she was a feme sole, and that she married prior to the execution of the deed by Harris to Smith.   There was no issue of fact on this point, and it would have been proper for the court to have so stated to the jury in his charge.   We find, however, that the court gave to the jury a special instruction asked by appellants' counsel, in which the jury were expressly told that .the power of attorney of Martha Theo. Kyle was revoked by her marriage, and that the deed from Harris to Smith did not pass her title. · The giving of this special charge put this matter in the position before the jury which appellants' counsel contend it should have been.   It was a plain instruction that the defendants could derive no benefit under the power of attorney executed by Martha Theo. Kyle to Harris.

5.   It is further objected to the general charge as above quoted, that it had been shown that Mrs. Simpson and Mrs. Hardeman (nee Martha Theo. Kyle) both joined by their husbands, joined in a deed attempting to convey the land in controversy to their brother W. H. Harris, at a date about two years after they made the powers of attorney to him, and that such act revoked the power of attorney of Mrs. Simpson and that of Mrs. Hardeman, if it had not already been revoked by her marriage.   It is admitted that the legal effect of such a deed would be to revoke previous powers of attorney given to convey the land.   If the evidence had been positive and without conflict, as contended for by appellants, then their position that the jury should have been told that the legal effect of such deed or attempted conveyance would be to revoke the power of attorney, would be correct.   The evidence upon this point, however, was not without conflict, and the court properly left the issue as to whether such an instrument was executed by them to the determination of the jury.   If such an instrument was not executed by them, the power of attorney given by Mrs. Simpson and her husband to W. H. Harris, authorizing him to convey the land, was in force, and Harris was authorized thereby to make a conveyance of the land, so far as the interest of Mrs. Simpson be concerned

As to the question of proof upon this point, it will be noticed further under a different assignment of error.

6.   In this connection, we will notice an assignment of error based upon the refusal of the following instruction:   "The jury is instructed that they cannot find for defendants as against Emma J. Simpson and the intervenor under any supposed deed executed as testified to by S. H. Hardeman or B. F. Hardeman, supposed to be lost, as there is no proof that such deed was acknowledged by Mrs. Simpson and her husband, and certificate of such acknowledgment attached thereto so as to convey the separate property of Mrs. Simpson."

It is true, as here contended, that the secondary evidence offered by defendants to establish a deed from Emma J. Simpson, joined by her husband, and Martha Theo. Hardeman joined by her husband, did not show that Mrs. Simpson ever acknowledged such an instrument of conveyance, and it would have been proper for the court to have so told

the jury. The court submitted the issue to the jury, telling them that Mrs. Simpson would not be bound by such conveyance, unless it was shown that she had properly acknowledged it. We find that appellants asked of the court the following instruction: "The jury is instructed that plaintiffs have introduced in evidence a deed dated September 27, 1869, executed by J. B. Harris, A. I. Simpson and S. H. Hardeman to W. H. Harris, so as to convey title to such interest in the Enoch Fryar league as may have been owned by them to the said Harris; and have also introduced said deed simply as a deed signed by Emma J. Simpson and Martha Theo. Hardeman, but not being a deed that would convey the title of said Emma J. Simpson and Martha Theo. Hardeman. You are instructed, therefore, that in order for the defendants to recover the interests of Mrs. Hardeman and Mrs. Simpson, attempted to be conveyed by said deed, it devolves upon them to show by a preponderance of the testimony that the officer before whom said deed was acknowledged attached thereto his certificate of acknowledgment, showing that Mrs. Hardeman and Mrs. Simpson appeared before him separate and apart from their husbands; that he explained fully said deed to them, and that they acknowledged such instrument to be their act and deed, that they freely and willingly executed the same for the purposes and considerations therein expressed, and wished not to retract it."

This special charge was, in substance, given in the main charge of the court; and as the plaintiffs' own special instruction asked to be given by the court put Mrs. Simpson and Mrs. Hardeman in the same attitude before the jury on the issue of executing this deed, we do not think they now should be heard to complain that the court did charge the jury in this manner. As before stated, the evidence did not show that Mrs. Simpson had acknowledged such a deed; it did tend to show, and was legally sufficient as a basis for the determination of the jury, that Mrs. Hardeman did properly execute the deed; but as plaintiffs in the special charge requested did not recognize this distinction as to the proof, we do not think the charge of the court submitting their interests in that manner should be treated as reversible error.

7. It is insisted that the verdict of the jury was not supported by the evidence, for the reason "that the title of plaintiffs and intervenor to the interest in the land sued for was not controverted and remained in them, unless Mrs. Simpson and Mrs. Hardeman had conveyed the land by valid deed to W. H. Harris, or W.. H. Harris as their agent, had made conveyance of their interest. That they had not thus made a valid conveyance of their interest to Harris was not in evidence before the jury. That W. H. Harris had no power to act for Mrs. Hardeman and Mrs. Simpson when he made the deed to Smith, is established by the evidence without contradiction or conflict. That W. H. Harris did not intend the conveyance made by him to be an act in the exercise of any power from or by reason of the powers of attorney previously executed by Mrs. Simpson and Mrs. Hardeman, and that the immediate grantee in the deed, John R. Smith, made by Wm. H. Harris, claimed

title under and through the deed made by Mrs. Simpson and Mrs. Hardeman, their respective husbands, and J. B. Harris, to W. H. Harris, the record copy of which is in evidence, is shown by the uncontradicted evidence in the case, and there is no conflict of evidence in this respect."

This assignment of error is not sustained by the record. The plaintiffs showed a complete chain of title from the sovereignty of the soil down to themselves. The evidence was sufficient on the part of the defendants to justify the jury in determining that the title had passed out of the plaintiffs into the defendants.

As to the interest of Mrs. Simpson, the defendants showed that she had executed a valid power of attorney to W. H. Harris, authorizing him to convey this land. They showed a conveyance of the land by Harris to John R. Smith; and the evidence was sufficient to show that said Harris in his conveyance to Smith acted under this power of attorney. The defendants further showed regular chain of title from Smith to themselves. Plaintiffs sought to show that this power of attorney had been revoked by an attempt to make an absolute conveyance of the property by Mrs. Simpson to Harris. There was a conflict of evidence as to whether Mrs. Simpson ever signed such an absolute conveyance, and under that conflict the jury were justified in settling the issue in favor of the defendants—that the power of attorney was not revoked.

8. As to the interest of Mrs. Hardeman, we are of opinion that the secondary evidence offered by defendants to establish a conveyance by her to W. H. Harris of her interest in the land, which deed it was shown was lost, furnished a sufficient basis for the jury to determine that Mrs. Hardeman had conveyed her interest in the land to W. H. Harris prior to the time he executed the deed to Smith.

We here give a statement made by appellees setting forth the issues of fact, grouping the evidence bearing upon them, and which is fully sustained by the record:   "There were two questions before the jury: first, if Mrs. Simpson and Mrs. Hardeman conveyed to Harris by deed, upon proper examination, by proper authority, and there was a certificate made and attached to the deed, fully complying with the law, plaintiffs could not recover; second, if Harris, in conveying to John R. Smith, was acting under power of attorney made by Mrs. Simpson, then she could not recover. The court submitted both these issues to the jury in the general charge. We will group the facts showing that Mrs. Hardeman parted with her interest by executing a deed to W. H. Harris which was properly acknowledged, and to which was attached a certificate by the proper officer, showing a privy examination, explanation and acknowledgment, and the declaration that she did not wish to retract it.

"First.   The original deed was lost, and appellee proved by S. H. Hardeman that he did not have the deed and did not know where it was; that none of appellees had such deed; that they had examined the county clerk's office and had made inquiry in other directions, and had

searched in all places where they had any reasonable hope of finding such deed, and failed to find it.

"Second. S. H. Hardeman, husband of Mrs. Hardeman, says: 'My wife and I sold my wife's interest in the Enoch Fryar league in Navarro County in 1869, to W. H. Harris, and we made him a deed to it.' Harris paid them $310; the deed was made about September, 1869, Hardeman signing the deed. His wife signed the deed also; then Hardeman left the room, leaving the officer there to explain the deed and take her acknowledgment. He was not present when the officer explained the deed and did not read the certificate. W. H. Harris was present, and the county clerk was there to take the acknowledgment. Hardeman left the room so that the officer could explain the deed to his wife and take the acknowledgment in his absence.

"Third. B. F. Hardeman says that he signed the deed as a witness; that S. H. Hardeman came for him to sign as a witness. When he went to the room for the purpose of signing the deed, the officer was there to explain the deed and take her acknowledgment. He saw the officer talking to Mrs. Hardeman about the transaction, and she understood the transaction, but witness (Hardeman) could not remember what the conversation was between Mrs. Hardeman and the officer. This occurred in 1869.

"Fourth. After that date Mrs. Hardeman moved to Navarro County and bought from John R. Smith 150 acres of the land embraced in the deed from W. H. Harris to John R. Smith, and moved on it.

"Fifth. After 1869, appellants paid no taxes on the land, and appellees paid all the taxes. Appellants were never in possession, except Mrs. Hardeman was in possession of the 150 acres she bought from Smith. Appellees were in possession all the while, and appellants exercised no acts of ownership over the land after 1869 until the deed to Stone and the institution of this suit. Appellees bought the land, paid for it, moved on it and made improvements.

"Sixth. The testimony of B. F. Hardeman the subscribing witness, and S. H. Hardeman, the husband, shows that the county clerk took the acknowledgment of Mrs. Hardeman."

Appellants seek to identify the copy of the deed read by them as a copy of a deed to show common source, with the deed testified to by S. H. Hardeman and B. F. Hardeman, and contend that because the copy they read did not show that the officer explained the deed to the married women, the plaintiffs should recover. To show that the deed was not the same the appellants proved that the County Clerk of Nacogdoches County was named Miles J. Gahan, and the copy purported to have been acknowledged before W. G. Gahan. This copy was shown Simpson and wife, and they both denied that they executed it. If the copy of the instrument on the records was in fact a copy of the original deed, signed by the parties, the County Clerk of Navarro County made a mistake in copying the name of the clerk; and the defendants relied upon that as a circumstance to show that the officer may

also have omitted to copy from the certificate of the officer taking the acknowledgment, the fact that he explained the deed to the married women. Simpson's name was A. I., while the deed is signed A. J. Simpson. To support the issue that W. H. Harris sold under the power of attorney made by Mrs. Simpson, appellees showed the following facts: (1) The power of attorney made by Mrs. Simpson to W. H. Harris in 1867, authorizing him to convey and make deeds to the interests of Mrs. Simpson in the Enoch Fryar league. (2) In 1867, when Mrs. Simpson and husband made power of attorney to W. H. Harris, and when Mrs. Hardeman and J. B. Harris made a power of attorney to W. H. Harris, the interest of the five heirs with reference to acreage in the 3000 acres of land in the Enoch Fryar league stood as follows:

W. H. Harris, $\frac{1}{3}$ of $\frac{1}{2}$ and $\frac{1}{5}$ of $\frac{1}{2}$, equal to........800 acres,

J. B. Harris, $\frac{1}{3}$ of $\frac{1}{2}$ and $\frac{1}{5}$ of $\frac{1}{2}$, equal to..........800 acres,

Mrs. Simpson, $\frac{1}{5}$ of $\frac{1}{2}$, equal to..................300 acres,

Mrs. Hardeman, $\frac{1}{5}$ of $\frac{1}{2}$, equal to...............300 acres,

Making a total of.......................2200 acres.

And the interest of Mrs. Smith, $\frac{1}{3}$ of $\frac{1}{2}$ and

$\frac{1}{5}$ of $\frac{1}{2}$, equal to...........................800 acres,

Making a total of........................3000 acres.

Prior to the marriage of Mrs. Hardeman in February, 1868, and after Mrs. Hardeman, J. B. Harris and Mrs. Simpson had executed powers of attorney to W. H. Harris out of the interest of himself, J. B. Harris, Mrs. Hardeman, Mrs. Simpson and W. H. Harris sold the following land: John Britton, 100 acres; John Douthet, 50 acres; J. H. Highnote, 75 acres; John Pickett, 120 acres; J. C. Roberts, 55 acres— making a total of 400 acres. So at the time W. H. Harris conveyed to John R. Smith, in October, 1869, the interest of W. H. Harris, J. B. Harris, Mrs. Hardeman and Mrs. Simpson was 1800 acres, that is, it was 2200 acres, less 400 acres sold, leaving 1800 acres. The interest of W. H. Harris alone in the 1800 acres being one-third of one-half and one-fifth of one-half, or 480 acres, and the interest of J. B. Harris being the same, would make 960 acres. The deed from W. H. Harris to Smith conveyed 1843 acres. It required, therefore, the interests of W. H. Harris, J. B. Harris, Mrs. Hardeman and Mrs. Simpson to satisfy the terms of the deed to Smith as to quantity. It is evident, therefore, W. H. Harris intended to convey by the deed to Smith, and such deed actually embraced, the entire interest of these four heirs in the 3000 acres of land in Navarro County.

"3. The deed from Harris to Smith, among other recitals, contains the following, 'I have a good right to sell and convey said land.'

"4. Mrs. Simpson stated to J. W. Edens that she had sold her interest to John R. Smith, and recognized him as the owner.

"5. A. I. Simpson testified that he knew John R. Smith at one time

owned the interest of all the Harris and Kyle heirs in the Enoch Fryar league in Navarro County. He also testified he and his wife either sold and conveyed their interest in the Enoch Fryar league to John R. Smith or to J. B. Harris, in 1869.

"6.  J. B. Harris made Mrs. Simpson a deed to land in Lampasas County for her interest in the Enoch Fryar league. Simpson has for a long time recognized John R. Smith as the owner of the Enoch Fryar league of land.

"7.  J. B. Harris testified that his impression was that they sold to John R. Smith, and that the sale may have been made by or through W. H. Harris, by power of attorney or otherwise. J. B. Harris said further, that he had no recollection of ever seeing Mrs. Simpson and husband sign a deed conveying their interest in the Enoch Fryar league to W. H. Harris, but he says his recollections and impressions are that John R. Smith became possessed by purchase from us (meaning Simpson and wife, Hardeman and wife, J. B. Harris and W. H. Harris) of all our right, title and interest in the Enoch Fryar league. In August, 1884, J. B. Harris had a talk with Mrs. Simpson, in which she stated she had no recollection of signing a deed to W. H. Harris, and Simpson stated at the same time, the same thing in substance, but stated further, he was under the impression that they (Simpson and wife) conveyed their interest to John R. Smith.

"8.  John R. Smith claimed under deeds from the Harris heirs, and in 1869 moved to Navarro County, and between that time and 1883 sold all the lands embraced in the deed to him to defendants, who paid for it, improved it and have been continuously in possession since. J. B. Harris says there were numerous trades in the land. He cannot remember how many deeds the heirs signed to Harris, but he thinks more than one was signed. Before the institution of this suit none of the defendants knew the copy of the deed read by plaintiffs was on record, and none of them knew of an adverse title.

"As opposed to this evidence, appellants had two circumstances: First, the deed from Harris to Smith did not state it was made under the power of attorney from Mrs. Simpson, while the deeds made by Harris in 1867, two years before, conveying 400 acres, above set out, did so recite. Second, there was a deed on record purporting to have been made by Mrs. Simpson and Mrs. Hardeman and J. B. Harris to W. H. Harris. The certificate, as recorded, did not show the deed was explained to Mrs. Simpson and Mrs. Hardeman."

We have carefully considered the entire evidence in the case, and are of the opinion that the jury were justified in determining the issues of fact, as before stated, in favor of the defendants. The questions involved are not free from difficulty; but taking the entire record, we think it conclusively shows that the plaintiffs in this case have parted with their title to the land in question, and that the defendants are the true owners of the land. Crain v. Huntington, 81 Texas, 614; Daniels v. Cheekmore, 27 S. W. Rep., 148; Little v. Bounds, 75 Texas, 316;

Blanton v. Ray, 66 Texas, 61; Overrand v. Menzer, 83 Texas, 130; Johnson v. Layford, 29 S. W. Rep., 57; Newby v. Hottman, 43 Texas, 314; Simpson v. Edens, 17 S. W. Rep., 688.

There are 22 assignments of error presented in appellants' brief, and while we have given full consideration to each of the assignments, we do not feel that it is necessary in the disposition of this case that we should discuss each and all of the assignments in the opinion. We have discussed, as we conceive, the main questions in the case, and we find that none of the assignments present reversible error, and the judgment is therefore affirmed.

Writ of error refused.                                    *Affirmed.*