HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v.
J. P. TRAMMELL.

Decided February 17, 1902.

1.—Carriers of Freight—Negligence—Pleading—Issues—Charge.

A general allegation in plaintiff's petition that the stock pens in which defendant placed his cattle and from which they escaped, were insecure, was sufficient, in the absence of special exception thereto, to admit evidence of insecurity from any cause, and where the evidence showed an independent cause, such as the knocking down of the fence by a derailed car of another road, a charge in relation thereto was not objectionable as being outside the issues.

2.—Same—Estoppel.

Where defendant introduced evidence and requested charges upon such phase of the case, it could not complain on appeal that a charge given in relation thereto was not within the issues raised by the pleadings.

3.—Same—Tender of Freight—Reasonable Hours.

Where defendant had transported cattle and tendered them to the consignee

at 12 o'clock on a cold, wet night, demanding the freight, which was a considerable sum, and the consignee had not the money with him at that time, and being a stranger in the city, knew not where to take the cattle, and declined to receive them, and defendant placed them in its stock pens, there was not such a tender at reasonable hours as exempted defendant from liability for the escape of the cattle from the pens that night.

Appeal from Navarro.  Tried below before Hon. L. B. Cobb.

*Frost, Neblett & Blanding,* for appellant.

*Simkins & Mays,* for appellee.

BOOKHOUT, Associate Justice.—On the 21st day of August, 1899, appellee instituted suit in the District Court of Navarro County to recover damages of appellant, the Houston & Texas Central Railroad Company, by reason of the alleged negligence of appellant in permitting certain cattle to escape from its pens in Corsicana and become damaged by reason of exposure to weather and from other causes.  On the 2d day of May, 1901, his second amended petition was filed, on which the case was tried.  The grounds of negligence alleged in the petition are as follows: "That the pens of appellant in which the cattle were unloaded were insecure, and from want of repair were insufficient for the purpose of holding appellee's cattle, and that this fact was well known to appellant. That appellant was guilty of negligence in permitting the pens to become in such condition, and in placing the cattle therein, which was unknown to appellee.  That owing to the insecurity of the pens and because of the negligence of appellant, its servants and employes, in not fastening the gates, the cattle were wrongfully and negligently permitted and allowed to escape during the night."

Appellant filed a general demurrer and general denial.  The demurrer was overruled and the case tried on the 3d day of April, 1901, and resulted in a verdict for the sum of $500, with 6 per cent interest from the 17th day of February, 1899, and on this verdict judgment was rendered in favor of plaintiff.  Defendant appealed.

*Opinion.*—1.  It is contended that the court erred in the following paragraph of its charge: "If the cattle were tendered plaintiff the night of their arrival and he refused to receive them, and that was a reasonable time for their delivery to him, and the cattle were placed in the pens with closed gates and fences up, and the fence or gate was knocked down by a derailed car of the Cotton Belt railroad, then defendant would not be liable unless the cattle pens were placed in such position with reference to said railroad as was in itself negligence, that is, such an act as would not be commonly done by persons of ordinary prudence in a similar case."

The petition alleges that the pens of defendant (appellant) were insecure, and from want of repair were insufficient for the purpose of hold-

ing said bunch of steers, which was well known to appellant or could have been known by the use of ordinary care, and it was guilty of negli-· gence in permitting said pens to get and be in such condition, and in placing the cattle therein, all of which was unknown to plaintiff; that said cattle reached Corsicana during the night and were by defendant (appellant), its servants and employes, unloaded .from the cars and placed in said pens, intending that the cattle should remain there during the night and until they could be delivered to and received by the plaintiff. Plaintiff shows that during the night, owing to the insecurity of said pens and because of the negligence of said defendant, its servants and employes in fastening the gates thereof, and because of the failure to use ordinary care in keeping the cattle therein, said defendant wrongfully, negligently, and carelessly permitted the cattle to escape from the pens during the night, and as a result thereof the cattle were allowed to and did scatter over the country, etc.

The defendant demurred generally to the petition. There was no special demurrer presented calling for and demanding a more specific statement of the reasons why the pens were insecure. We are of the opinion that the general allegation that the pens were insecure was sufficient to admit evidence to show their insecurity from any cause. If the pens were so erected with reference to the Cotton Belt track as to make them unsafe and insecure, and if a person of ordinary prudence would not have so erected said pens, then the defendant was liable for the damages occasioned to the plaintiff in permitting the cattle to escape therefrom under the facts as shown. The contention that the charge submits an issue of fact not made by the pleadings is therefore without merit.

Appellant did not plead that the accident was the result of an independent cause. It introduced evidence tending to show that the ,accident was caused by a car of the Cotton Belt railroad, and that the gate had been previously knocked down by a train on that road. Appellant presented special charges in which it requested the court to instruct the jury that if the gate to the pens was knocked down by a car or train on the Cotton Belt railroad, to find for defendant. These charges were properly refused, and the court instructed the jury as above set out. It would seem that appellant, having introduced evidence on this phase of the case and requested charges in reference thereto, ought not now be heard to complain that the court erred in submitting the issue. Railway v. Sein, 33 S. W. Rep., 559; Railway v. Sein, 33 S. W. Rep., 316; Railway v. Knight, 49 S. W. Rep., 250; Simpson v. Edens, 38 S. W. Rep., 474.

2. The appellant contends, under its seventh and tenth assignments of error, that if the fence forming the inclosure, or the gate to the inclosure, was knocked down by the Cotton Belt train, an independent agency, and this was the cause of the escape of the cattle, and the cattle had prior to that time been tendered to appellee after being placed in the pen, appellant would not be liable. The evidence shows that the

cattle reached Corsicana about 12 o'clock at night, and that they were then offered to appellee, and the freight demanded. Appellee did not have the money with him to pay the freight and declined to receive them that night; whereupon appellant unloaded the cattle and put them in its pens. During the night the cattle escaped and stampeded over the prairie.

The statute requires a railway company to erect at each of their depot stations or places established by such company for the reception and delivery of freight, suitable buildings and inclosures to protect produce, goods, wares, and merchandise, and freight of every description from damages. Rev. Stats., art. 4519. It is held that under the designation of inclosures, stock pens for the reception of cattle tendered for shipment are included, and that such pens must be sufficiently safe for the purpose indicated. Railway v. Trawick, 80 Texas, 270.

The trial court submitted to the jury, under proper instruction, the issue as to whether the stock pens were insecure at the time the appellant company placed the cattle therein. The verdict in effect was that the pens were insecure. It was the duty of appellant to transport the cattle to Corsicana and there deliver them to appellee. Appellant contends that its duty as a carrier ceased when the cattle reached Corsicana and were unloaded into its stock pens, and after that time its liability was that of a warehouseman. If appellee was at fault in not receiving the cattle when they were offered to him at 12 o'clock at night on their arrival in Corsicana under the circumstances accompanying said offer, then this contention is sound. When the offer was made, payment of freight was demanded as a condition upon which the cattle would be delivered. The weather was cold and wet and the ground was sloppy. Appellee was a stranger in the city and did not know the location of the place where he contemplated feeding the cattle. Appellee did not have the money with him to pay the freight and he declined to receive the cattle. We do not think it can be said, as a matter of law, that a tender made under these circumstances and conditions was such a tender as in fact amounted to a delivery of the cattle. It can hardly be expected that appellee would have the money on his person with which to pay the freight at such an hour. It seems that the freight amounted to a considerable sum. The appellant was bound to tender the cattle within a reasonable time and within reasonable hours. Railway v. Haynes, 72 Texas, 175; Morgan v. Dibbell, 29 Texas, 119; Railway v. Schneider, 1 W. & W. App. Cas., secs. 120, 121; Hutch. on Carr., sec. 340; 5 Am. and Eng. Enc. of Law, 2 ed., 217-225; Hill v. Humphrey, 39 Am. Dec., 117; Eagle v. White, 37 Am. Dec., 434.

The court submitted the question to the jury whether the cattle were tendered to plaintiff at a reasonable time and within reasonable hours. It was a question of fact whether the cattle were tendered within reasonable hours, and whether appellee should, under the circumstances, have received them. The jury by their verdict found, in effect, that the cattle were not tendered within reasonable hours, and that appellee was not

·compelled to receive them when tendered under the circumstances above ·set out. The evidence amply supports their finding. Under this finding appellant's liability as a carrier did not terminate upon unloading the cattle and placing them in its stock pens.

There are various assignments of error in which complaint is made ·of the court's charge, and of the action of the court in refusing several special charges requested by appellant. We have examined and considered these assignments, and are of the opinion that they present no reversible error. The assignment complaining of the verdict as not being ·supported by the evidence is without merit. Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.