SAN ANTONIO & A. P. RY. CO. v. BROAD-DAVIS CATTLE CO.†

(Court of Civil Appeals of Texas. Texarkana. Oct. 19, 1911. Rehearing Denied Nov. 9, 1911.)

1. CARRIERS (§§ 211, 230*)—CARRIAGE OF LIVE STOCK—STATUTORY OBLIGATIONS.

Rev. St. 1895, art. 4519, requiring a railroad company to erect suitable buildings or inclosures to protect freight of every description, does not impose on a carrier the duty of equipping its cattle pens with facilities for watering stock preparatory to loading, and, in the absence of a statute requiring a carrier to water stock at stated intervals or designated places, the question whether its failure to do so is negligence is for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928, 962; Dec. Dig. §§ 211, 230.*]

2. CARRIERS (§ 206*) — CARRIAGE OF LIVE STOCK — CONTRACT TO FURNISH CARS — BREACH—LIABILITY.

A carrier failing to furnish cars for the shipment of live stock pursuant to its agreement is liable for the damages proximately resulting therefrom.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 916, 917; Dec. Dig. § 206.*]

3. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK — INJURY BY FAILING TO WATER — "CONTRIBUTORY NEGLIGENCE."

Contributory negligence, when predicated on the omission to do some act to avoid the injury complained of, is the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, where such failure contributed to cause the injury; and an instruction that if a man of ordinary care situated as a shipper of live stock was situated, and while his cattle were in cattle pens preparatory to loading, could and would have taken the cattle to water, he was guilty of negligence in not watering the cattle, was properly refused because submitting an improper test.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*

For other definitions, see Words and Phrases, vol. 2, pp. 1540–1547; vol. 8, p. 7617.]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by the Broad-Davis Cattle Company against the San Antonio & Aransas Pass Railway Company and another. From a judgment for plaintiff against defendant named, it appeals. Reversed and remanded.

Spoonts, Thompson & Barwise, and Chapman & Lockett, for appellant. A. J. Clendenen and R. C. Fuller, for appellee.

HODGES, J. This suit was instituted by the appellees against the appellant, San Antonio & Aransas Pass Railway Company, and the Missouri, Kansas & Texas Railway Company of Texas, to recover damages to a shipment of cattle. The testimony shows that in May, 1909, the appellees purchased about 500 head of cattle from a ranch situated 40 miles from Falfurrias, in Starr county, Tex., to be delivered in the shipping pens of the appellant at Falfurrias. The appellees pleaded, and offered testimony to show, that they had previously made a verbal contract with the appellant's agents at this shipping point by which the cattle were to be placed in the pens on the 15th of May, and cars were to be furnished and the cattle shipped out to Ft. Worth on the morning of the next day. The cattle were placed in the pens on the evening of the 15th, and five cars of them were shipped out early the next morning according to the agreement. This shipment, it seems, went through to destination without any injury. The remainder, consisting of about 15 cars, were not loaded till near midnight of the same day. The delay was due to the failure of the appellant to sooner furnish the necessary cars. During that time the cattle were held in the pens without water, no facilities having been provided by which this could be supplied them in the pens. The testimony shows that the cattle were watered the last time as they were being driven to the pens, and when within about 2½ or 3 miles of Falfurrias, on the evening before. It is claimed by the appellees that the appellant was negligent in forcing them to hold their cattle in the pens during that time without furnishing any facilities for giving them water; that by reason of this the cattle had no water till they arrived at Yoakum at about 2:30 a. m. of the 18th, an interval of 56 hours. They also claim that by reason of being deprived of water, the cattle become "weak, emaciated, and greatly injured." It is further claimed that appellant was negligent in holding the cattle in the cars for an unreasonable length of time at Yoakum, and in allowing them only about 2½ hours time for feeding, watering, and resting. When the stock arrived at Ft. Worth, some of them were dead, others were down, and had been trampled upon and injured. The jury returned a verdict

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Application for writ of error dismissed by Supreme Court.

against the appellant, San Antonio & Aransas Pass Railway Company, for $2,500, and in favor of the Missouri, Kansas & Texas Railway Company of Texas.

Appellant's first assignment of error attacks the following portion of the court's charge: "If you believe from the evidence that it was agreed and understood by and between the plaintiffs and the defendant, San Antonio & Aransas Pass Railway Company, that on the 15th of May, 1909, the cattle in question should be placed in said defendant's stock pens at Falfurrias, Tex., and that on the morning of the 16th of said month the said cattle should be shipped out of Falfurrias by the said defendant, and you further find that, in pursuance of such understanding, the plaintiffs drove or caused to be driven said cattle to Falfurrias, Tex., and placed the same in defendant's stock pens, then from the time they were so placed in said pens it became, and was, the duty of said defendant to use such care as an ordinarily prudent person would have used under the same or similar circumstances to provide facilities for watering said cattle in said stock pens, and to use the same care to prevent said cattle from suffering injuries while detained in said stock pens; and, upon the placing of said cattle in said stock pens, it became and was the duty of said defendant to use ordinary care to transport the said cattle to the end of said defendant's line of railway at Waco, Tex., with reasonable dispatch and without unnecessary delay. And if you find that after they were so placed in said stock pens the said defendant failed to furnish facilities for watering said cattle, or that said defendant unreasonably delayed the shipment of said cattle, and that such failure was negligence, and that by reason of such failure in either respect, if any, said cattle became weak and emaciated and were injured and damaged thereby, and if you further find and believe from the evidence that the said cattle were unreasonably delayed at Yoakum, on said defendant's line of railway, and that such delay, if any, was negligence on the part of said defendant, then you will find for the plaintiffs such a sum of money as in your judgment will compensate plaintiffs for the injuries, if any, sustained thereby."

[1] Article 4519 of the Revised Civil Statutes provides: "Each and every railroad company is thereby required to erect at each and every depot, station or place established by such company for the reception and delivery of freight, suitable buildings or inclosures to protect produce, goods, wares and merchandise and freight of every description from damage by exposure to the weather, stock or otherwise, in default of which such railroad company shall be liable to the owner of such produce, goods, wares or merchandise for the amount of damages or loss sustained by reason of such improper exposure, together with all costs and expenses of recovering the same, including necessary attorney's fees." This statute is relied on for charging railroad companies with the duty of providing suitable pens for the reception of live stock intended for shipment. Railway Co. v. Trawick, 80 Tex. 270, 15 S. W. 568; Railway Co. v. Trammell, 28 Tex. Civ. App. 312, 68 S. W. 716. There is nothing in this article of the statute which expressly imposes upon railway companies the duty of equipping such pens with facilities for watering stock.

[2] If there was an agreement by the agents of the appellant to furnish appellees with cars for the shipment of their cattle on the morning of May 16th, and appellant failed to do this, it was liable for such damages as proximately resulted from its failure to comply with the terms of its contract. It was its duty to do that which it had contracted to do, and to exercise the proper degree of care for the preservation of the stock while in its keeping. The charge of the court assumed as a matter of law that it was the duty of the railway company to use ordinary care to furnish water for the stock while in the pens before they were loaded in the cars. The court had no more authority to do this than he had to tell the jury that the railway company should exercise the same care to supply them with water in the cars, or at some particular point on their route. In the absence of some statutory provision requiring stock to be watered at stated intervals, or designated places, whether or not the failure to do so or to make provision therefor is negligence becomes an issue for the jury. We think the charge was erroneous and misleading.

[3] The remaining assignments of error are without merit. The only one which we think it proper to specially refer to is that which complains of the refusal of the court to give the following special charge: "If you believe and find from the evidence a man of ordinary care situated as plaintiffs were on May 16, 1909, and while the cattle were in the pens, could and would have taken the cattle to water, then you are instructed that plaintiffs were guilty of negligence in not watering said cattle, and, if you believe that such negligence caused or contributed to cause any damage suffered by the cattle, you will find for the defendant as to such damage." Contributory negligence, when predicated upon the omission to do some act to avoid an injury, is the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, and such failure causes or contributed to cause the injury complained of. An ordinarily prudent person under the circumstances here referred to might have taken the cattle out of the

pens for the purpose of giving them water; but it does not necessarily follow that a person of ordinary prudence would not have omitted to do this under the same conditions. The charge, we think, submits an improper test, and was properly refused by the court.

For the error pointed out, the judgment of the court is reversed, and the cause remanded.