CONSOLIDATED COPPERSTATE LINES,
INC., Appellant,

v.

STANDARD ASBESTOS MANUFACTUR-
ING & INSULATING COM-
PANY, Appellee.

No. 16517.

Court of Civil Appeals of Texas.

Fort Worth.

April 17, 1964.

Rehearing Denied May 15, 1964.

Rawlings, Sayers, Scurlock & Eidson and Richard J. Linton, Fort Worth, for appellant.

Pannell, Dean, Pannell & Kerry, Beale Dean and Henry E. Kerry, Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment for damages in behalf of plaintiff Standard Asbestos Manufacturing & Insulating Company against defendant Consolidated Copperstate Lines, Inc., based upon loss and damage to plaintiff's freight during shipment or as the result of defendant's handling while performing the function as carrier, the defendant appealed.

Judgment affirmed.

Even if we give credence to defendant's contention that the damage in question had its origin in the rain which fell and dampened the plaintiff's metal products after delivery thereof was complete we are of the opinion, and so hold, that the liability of a carrier in an instance where goods are delivered by it in a condition created by its own act, or in a condition which occurred by reason of its omission to take protective action which it was under a duty to take

relative to such goods,—which condition ultimately and inevitably results in damage thereto—is not to be distinguished from that liability which is devolved upon a carrier for obvious damage to goods occurring during its possession prior to its tender of delivery—if the shipper was neither chargeable with notice nor actually had any knowledge of the condition prior to the time the damage occurred. 9 Am.Jur., p. 821, "Carriers", § 667, "Commencement and Duration of Liability"; 6 L.R.A. 849, note: "Carrier of freight; liability for loss of goods"; Rothchild Bros. v. Northern Pac. Ry. Co., 1912, 68 Wash. 527, 123 P. 1011; 40 L.R.A., N.S., 773; 130 Amer.St.Rep. 460, note: VI "For what Acts the Carrier is Liable, (d) Losses or Damages Arising from an Improper Delivery"; Houston & T. C. Ry. Co. v. Trammell, 1902, 28 Tex.Civ.App. 312, 68 S.W. 716, error refused.

The difference in the case under scrutiny from the ordinary case of damage to goods during carriage is that the metal products being carried became contaminated, rather than immediately damaged, by a chemical residue in the form of ferrous sulphate powder. Such escaped from some bags of said chemical which were carried along with the metal products on the same shipment. It is to be noticed that the plaintiff was not responsible for and did not know that the chemical would be shipped on the same truck and at the same time that its products were shipped. That fact was known only to the defendant. Neither was the plaintiff notified of the fact of contamination prior to time rain fell on its products.

It appears to have been the addition of moisture (from a rain) to the ferrous sulphate powder coating on the products which "set the chemical process to work", with the result that corrosion of the protective plating occurred *in such degree* that it was rendered useless for the purpose to which plaintiff intended it to be put. There is no question but that the loss and damage resulted from the contamination upon application of the moisture.

At the plaintiff's request defendant picked up and thereafter held or disposed of the metal—to the profit of the defendant if any profit therefrom was derived.

In the establishment of right to recover by its suit the plaintiff, in an abundance of caution, sought to establish the liability of the defendant under alternative theories: (1) that defendant was liable for the loss as an insurer, or (2) that defendant was obligated to exercise a high degree of care, wherein it failed and plaintiff's loss and damage resulted. In answers to special issues jury findings were made under which plaintiff contends its judgment is supported under either of these theories.

■ The jury found that the defendant received plaintiff's metal products for shipment in good condition, and also found that when the goods were delivered to plaintiff after shipment they were in a contaminated condition. There is a point of error complaining of the form of a certain special issue in answer to which the contamination was found, but the point is overruled because in answering two other special issues, of which no complaint is made, the jury returned what amounted to an identical finding, as to which any necessary implied finding of consequent damage would be supplied (in view of the judgment) by Texas Rules of Civil Procedure, rule 279, "Submission of Issues".

The jury found that in the exercise of a high degree of care the defendant knew, or could have learned, of the propensity of ferrous sulphate to corrode metal under certain conditions, and should have known that it was in torn and rotten bags in the same trailer with plaintiff's goods, but that nevertheless defendant proceeded to effect transportation; that plaintiff's damage resulted as a natural and proximate consequence; and that failures on the part of the defendant in said respects severally constituted negligence which amounted to a proximate cause of the loss and damage.

The jury further found that defendant failed to keep the ferrous sulphate separate from plaintiff's goods, and handled and transported it in such manner as to cause plaintiff's goods to be contaminated thereby, furthermore failing to notify plaintiff of such contamination;—by reason of which failures on the part of the defendant in said respects the loss and damage resulted as a natural and proximate consequence; and that such failures on the part of the defendant in said respects severally constituted negligence which amounted to a proximate cause of the loss and damage.

■ As indicated in the forepart of the opinion we are of the opinion and hold that under the circumstances of the case the defendant's liability was that of an insurer in the same manner as would have been the case were there no question but that the entire damage to plaintiff's goods actually occurred prior to and was apparent at the time of delivery.

In the court's charge the term "negligence" as used in the special issues submitting plaintiff's alternative theory of liability was defined as "the failure to use a high degree of care". The term "high degree of care" was furthermore defined as "that degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances".

■ If we err in our conclusion that defendant's liability was that of an insurer in this case, we have no doubt but that under the relationship of the parties, and the nature of the questions to be resolved, the manner of submitting which is hereby approved, that the judgment should be sustained because of the degree of negligence the defendant was found guilty.

■ Defendant also complains because of the refusal of the trial court to grant leave to file a trial amendment after the evidence was closed. The pleading desired to be added was one by which the defendant alleged that the shipper of the ferrous sulphate was guilty of negligence because it failed to warn the defendant that such chemical was dangerous, in that when it

was combined with water it would produce a corrosive acid, and that such negligence on the part of that third party was the sole cause of plaintiff's loss and damage.

It is to be observed that the trial amendment presented an inferential rebuttal issue, the burden of which, if submitted to the jury, would be cast upon the plaintiff. The inquiry proper to be made by special issue would be whether the jury found, from a preponderance of the evidence, that said third party's negligence "was not" the sole cause of the loss and damage.

T.R.C.P. 63, "Amendments", makes provision for the filing of trial amendments "only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such amendment will operate as a surprise to the opposite party." Decisions under the rule establish the fact that action of the trial court in relation to such amendments is discretionary. Therefore the action of a trial court, whether it be one granting or denying leave to file such an amendment, is to be tested in the event of an attack thereon upon appeal by the determination of whether the action of the trial court "was a clear abuse of discretion". 4 Tex.Jur.2d 358, "Appeal and Error—Civil", § 823, "(Matters within jurisdiction of lower court) Pleadings and parties"; 3B Tex.Jur., p. 417, § 926.

■■ The complaining party carries the burden of showing that reversible error flowed from the action of the trial court in denying the right to amend. Such a person must show that the denial was arbitrary or that it resulted in substantial and consequential injury. Weaver v. Bogle, 1959 (Tex.Civ.App., Waco), 325 S.W.2d 457, citing the Texas Jurisprudence section mentioned in the above paragraph, and also § 925. In the instant situation we are of the opinion that the trial court's action was proper rather than arbitrarily erroneous, and, from a review of the evidence; especially from defendant's own employees,

we are confident that the denial of leave to file the amendment did not result in substantial or consequential injury to the defendant.

Judgment is affirmed.