T. W. COOKE, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 9, 1894.

1. **Common Carriers**: RAILROADS: CATTLE IN STOCK PENS. If a railroad permits the fences of its stock pens to become so rotten and out of repair that cattle placed therein for shipment over its road, get out, are stampeded and injured, it will be responsible to the owner of such cattle for such injury, as it should keep its stock pens in a reasonably safe and secure condition for the purposes intended.

2. **Evidence**: OPINION AS TO EFFECT OF STAMPEDE. Farmers, cattle dealers, feeders and traders may give their opinion as to the effect of a stampede on the general appearance and market value of fat cattle.

3. ———: BILL OF LADING: GENERAL DENIAL. A bill of lading contain-
ing a release of all causes of action is not admissible in an action for
injuries to cattle by stampede, though made and delivered after such
stampede, where the answer is a general denial, as such evidence
could only support a confession and avoidance.

4. ———: FORMER STATEMENT: HARMLESS ERROR: SURPRISE. A
former written statement of the matters in controversy made by a
witness is admissible in evidence as it may tend to impeach him; but
its exclusion in this case is harmless error as all its material contents
went to the jury on the examination of the witness notwithstanding
its former exclusion. *Held*, further, the discrepancy in the witness's
testimony at the trial and in his written statement was so slight as
not to work surprise to the defendant who must expect plaintiff to
introduce evidence to support his pleading, even though such testi-
mony be false.

*Appeal from the Barton Circuit Court.*—HON. D. P.
STRATTON, Judge.

AFFIRMED.

*Wallace Pratt* and *J. C. Cravens* for appellant.

(1) All that part of plaintiff's testimony, as well,
that of his witnesses as to what effect the getting heated
and worried, etc., would have upon a lot of beef cattle
was irrelevant, incompetent, intangible, speculative and
wholly chimerical, and was but the expression of the
opinion of the witnesses, on a matter not the subject of
expert testimony. *Belch v. Railroad,* 18 Mo. App. 80;
*White v. Stoner,* 18 Mo. App. 540; *Walton v. Railroad,*
40 Mo. App. 547; *Muff v. Railroad,* 22 Mo. App. 584;
*Hurt v. Railroad,* 94 Mo. 260; *Gutheridge v. Railroad,*
94 Mo. 468; *Birney v. Railroad,* 20 Mo. App. 470; *Way
v. Railroad,* 40 Iowa, 341; *Benedict v. Fon Du Lac,* 44
Wis. 495; *Griffin v. The Town, etc.,* 42 Wis. 509;
*Lincoln v. Railroad,* 23 Wend. 425; *Blair v. Railroad,*
20 Wis. 262; *Burt v. Wigglesworth,* 117 Mass. 302;
*Brown v. Plank Road,* 89 Mo. 152; *King v. Railroad,* 98
Mo. 236; *Pike v. Railroad,* 40 Wis. 583; *Schermehorn v.*

*Tyler*, 11 Hun, 551; *Norman v. Wells*, 17 Wend. 136. It is the province of the jury to determine the effect if the amount of damages is what is meant by it. It is the province of witnesses to furnish the *data* from which the amount is ascertained. *Vandeusen v. Young*, 29 N. Y. 36; *Daniels v. Mosher*, 2 Mich. 184; *Fish v. Doage*, 4 Denio, 312; *Paige v. Hazard*, 5 Hill, 614. (2) Even if the effect upon, or alleged damage to, cattle by becoming frightened, heated and worried by running, were not entirely speculative and intangible, certainly the only conceivable way by which it could be shown by expert testimony, would be for competent judges who had actually seen and examined the cattle before their escape, and then immediately afterward, to state their value both before and after the escape. *Hosher v. Railroad*, 60 Mo. 303; *Calkins v. Railroad*, 90 Mo. 538; *Greenwell v. Crow*, 73 Mo. 638. (3) All damages to plaintiff's cattle, whether tangible or intangible, real or speculative, present or prospective, resulting from said escape, were waived and abandoned by the contract of shipment as expressed in the bills of lading. The placing of the cattle in the pens by the plaintiff was pursuant to this contract thereafter put in writing. The cattle were in transit as soon as placed in the stock yards, and but for the written contract, the common law liability of the carrier would obtain—but by the terms of the bills of lading they were then at the owner's risk. It was his duty to remain with them and see that they did not escape, or from any cause injure themselves. Hutchinson on Carriers, secs. 89–128; *Rogers v. Wheeler*, 52 N. Y. 262; *Ullman v. Grand Tower Co.*, 89 Ill. 244; *Montgomery v. Railroad*, 39 Ill. 335. A contract entered into in writing after initiatory steps have been taken toward performance, always relates back to the inception of the undertaking and determines the respective rights and liabilities of the parties thereto.

Hutchinson on Carriers, secs. 120–122; *Snow v. Railroad*, 109 Ind. 422. (4) The bills of lading were competent evidence and should have been admitted. They constituted the contract by which defendant's liability was to be determined. Hutchinson on Carriers, sec. 126; *Long v. Railroad*, 50 N. Y. 76; *Cleary v. Railroad*, 77 Mo. 634; *Turner v. Railroad*, 20 Mo. App. 632. (5) Defendant was entitled to a new trial on the ground of surprise at the testimony of its witness, Schreiner. *Fretwell v. Lafoon*, 77 Mo. 26; *O'Connor v. Duff*, 30 Mo. 595; *Peers v. Davis*, 29 Mo. 184.

*H. C. Timmonds* for respondent.

(1) No witness was asked to, nor did any give his opinion as to the damages sustained by plaintiff. Men who had large experience in handling and shipping fat cattle were asked to, and did, state the effect that running, overheating, exciting and scouring of such cattle would have on their general appearance and market value; also the extra shrinkage and loss in weight, per head, consequent upon such running, overheating, exciting and scouring. These witnesses spoke from long experience in that particular business and their testimony was competent. *Young v. Railroad*, 52 Mo. App. 531; *Cantling v. Railroad*, 54 Mo. 385; *Elsner v. Sup. Lodge*, 98 Mo. 645; *Johnson v. Moffett*, 19 Mo. App. 159; *Woolwine v. Bick*, 39 Mo. App. 495; *Straus v. Railroad*, 86 Mo. 433. (2) The defendant became a common carrier, as to these cattle, as soon as it received them into its stock yards preparatory to shipment; it is liable for all damages occasioned by reason of the defective condition of the fences inclosing the yards in which the cattle were placed. *Mason v. Railroad*, 25 Mo. App. 473; *McCullough v. Railroad*, 34 Mo. App. 23. (3) The shipper is not required to judge as to the suf-

ficiency of the fences; that duty devolves upon the carrier, and the responsibility rests on it. *Sloan v. Railroad*, 58 Mo. 220; *Potts v. Railroad*, 17 Mo. App. 394; *Mason v. Railroad, supra*. (4) Plaintiff will not be prevented from recovering by reason of any stipulation in the contract of shipment, waiving any claim for damages arising out of the negligence of the defendant. *Potts v. Railroad*, 17 Mo. App. 401; *Harrison v. Railroad*, 74 Mo. 373; *McCullough v. Railroad, supra*. (5) As the bills of lading were not pleaded, they were properly excluded from evidence. Bliss on Code Pleading, sec. 323, *et seq*. (6) Defendant claims to have been surprised by the testimony of Mr. Schreiner, who was subpoenaed and placed upon the witness stand by plaintiff. Such surprise, if any, was not made manifest till after the verdict. Defendant was willing to take the chances of a verdict. "A party can not be surprised that his adversary introduces testimony in support of the issues made by the pleadings." And it comes too late to raise that question for the first time in the motion for a new trial. *Bragg v. Moberly*, 17 Mo. App. 221; *Albert v. Seiler*, 31 Mo. App. 247.

GILL, J.—Omitting formal allegations, plaintiff's petition states: "That defendant kept and maintained at or near its depot, and adjoining its said railroad tracks, at the town of Kenoma, in said county of Barton, stock yards for the purpose of receiving and retaining cattle and other live stock brought to it for transportation at that point. That on the seventh day of March, 1892, the plaintiff, having previously arranged with the defendant, as such common carrier for compensation, to receive and transport for him over its said railroad five car loads of live cattle from its said depot at the town of Kenoma to Kansas City, placed in defendant's said stock yards at said town of Kenoma

preparatory to shipment over defendant's said railroad, one hundred and three head of fat steers (when and where they were received by defendant to be there held and detained till loaded onto defendant's cars on its said railroad for transportation to Kansas City as aforesaid). That said cattle were placed in said stock yards by plaintiff under directions and at the request of the defendant. That said cattle were fat, having been fed for the beef cattle market at Kansas City, and plaintiff was about to ship them over defendant's said railroad to be marketed at Kansas City as and for beef cattle. That said cattle when placed in said stock yards were well, strong, healthy, smooth, plump, docile and in every respect in good condition for market, and in such condition as to readily demand and bring the highest market price. That it became and was the duty of the defendant to receive said cattle for transportation, and it became and was the duty to maintain good and sufficient fences around its said stock yards to retain cattle placed therein for transportation over its railroad. That the defendant negligently allowed and permitted the fences inclosing said stock yards to become and remain out of repair, rotten and insufficient to retain cattle placed therein as aforesaid. That after said cattle had been placed in said stock yards as aforesaid, and while there to be loaded onto defendant's cars for transportation, two sides of said fence, by reason of the rotten and weak condition thereof, fell, or were pushed down by said cattle, and they escaped from said yards and became and were stampeded. That during and by reason of said stampede said cattle ran over each other, killing one of said fat steers of the value of $50 and injuring and crippling five others of said fat steers so that they became and were thereby depreciated in value of the sum of $107.50. That each and every one of the other

ninety-seven head of fat steers, by reason of the stampede aforesaid, caused as aforesaid, became run down, sore, lame, overheated and scoured, so that by reason thereof each and every one of them became and was reduced in flesh and weight one hundred pounds, to their injury and damage in the sum of $363.70. That in addition to the killing and injuries aforesaid to said cattle, the whole of them, by reason of said stampede, were caused to present such a wearied, worn, gaunt, rough and unmarketable appearance that they were, by reason of that fact alone, depreciated in market value to the sum of $295. So plaintiff says by reason of the premises he was and is damaged in the full sum of $816.75, for which sum he prays judgment."

The answer was a general denial. There was evidence tending to sustain the allegations of the petition, and the court then, at the instance of plaintiff, gave this instruction: "If you shall believe from the evidence that the cattle in question belonged to plaintiff; that he arranged with defendant to receive and transport them for him; that pursuant to such arrangement, plaintiff took them to defendant's railroad for shipment; that the stock yards referred to in the testimony were kept and used by the defendant as a place in which to receive and retain cattle brought to its railroad; that defendant received said cattle into said stock yards preparatory to shipment; that the fences surrounding said yards had been by defendant allowed to become and remain in a weak, rotten and defective condition, so as to be insufficient to retain cattle placed therein; that by reason of such defective condition, plaintiff's cattle escaped from said yards and ran away, thereby being injured and damaged, then your verdict should be in favor of the plaintiff."

The instructions given on request of defendant discharged it of liability if the said stock pen was

reasonably safe and secure for the holding of stock under ordinary circumstances, and imposed the burden on the plaintiff to prove that such pen, or the fence thereof, was out of repair and not secure, etc. Plaintiff had a verdict and judgment for $500, and defendant appealed.

As will be seen, this is an action for damages accruing to the plaintiff by reason of the failure of the defendant railroad company to keep and maintain a sufficient stock pen at Kenoma, Missouri, wherein plaintiff's cattle were received and held preparatory to shipment. The case, in quite every substantial particular is much like *Mason v. Railroad*, 25 Mo. App. 473, and, as to the rules of law involved, very similar to *McCullough v. Railroad*, 34 Mo. App. 23. In the former case the cause of the damage was the same as here, a defective fence inclosing a stock pen erected and maintained by the railroad company to hold cattle about to be transported; and, as here, the fence gave way, the cattle escaped and were injured. It was there held that the liability of the company as a common carrier attached at the time the cattle were delivered in the pens — following the rule announced by Mr. Hutchinson in his work on carriers, that "in such cases the deposit is a mere accessory to the carriage, and does not postpone its liability as a common carrier to the time when they shall be actually put in motion towards their place of destination."

Following, then, the law as announced in the foregoing authorities, this defendant was in duty bound to keep the stock yard at Kenoma in a reasonably safe and secure condition for the purposes intended; and if it failed to do so and its patrons, or shippers, were thereby damaged in the manner here alleged, then the defendant must be held responsible. The trial court so instructed the jury, as will be observed by reference to

the instructions given. There is then, in that respect, no just cause to complain.

At the trial plaintiff introduced several witnesses who testified as to the effect that stampeding, over-heating, scouring, etc., would produce on fat cattle, such as the plaintiff's; what would be the change, if any, as to their general appearance and market value; whether there would be more than ordinary shrinkage or loss of weight, etc. To this evidence defendant's counsel objected, and now calls attention thereto in his brief. We regard these objections entirely without merit. The witnesses were experienced farmers, cattle dealers, feeders or traders, and it would seem proper to admit such testimony as tending to advise the jury in matters with which men of other callings are not supposed to be so well acquainted.

Defendant's counsel further contends that the trial court erred in excluding the bill of lading which was given to plaintiff at Kenoma, but subsequent to the time when the cattle escaped from the pen and were injured. The evident purpose of introducing the bill of lading was that the defendant might escape liability under the eleventh clause thereof, which provided: "In consideration of the rates herein named and the aforesaid covenants, the shipper hereby releases and does waive and bar any and all causes of action for damages that have accrued to him by any written or verbal contract prior to the execution hereof." The court's ruling was unquestionably correct. The answer was a general denial and under it the defendant could not be allowed to make a defense of confession and avoidance. If the defendant desired to prove that, by a subsequent arrangement, the plaintiff had waived his rights under the prior verbal agreement for carriage, or that there had been accord and satisfaction, such defense should have been pleaded.

On the trial, one Schreiner was called to the witness stand by the plaintiff and he gave his version of what he saw when the cattle escaped from the stock pen, etc. On cross-examination it developed that prior to the trial one of defendant's agents had secured from Schreiner a written statement of the occurrence. The witness admitted the execution of the paper and defendant's counsel asked to read it to the jury, doubtless for the purpose of impeaching the witness by showing that he had related the matter differently on a former occasion. On the plaintiff's objection the court refused to permit the paper to be read in evidence. In our opinion the court should have allowed the written statement to be read to the jury. It was proper as impeaching testimony—tending to disprove much of his evidence at the trial as was contradicted by the witness. However, the error was substantially cured by the manner of the subsequent cross-examination to which Schreiner was subjected by defendant's counsel. The witness admitted the execution of the paper, said it was more likely to be correct than his present testimony, because made a short time after the occurrence, as he "remembered it correctly then." Defendant's counsel then followed up the examination, quoting practically every material statement contained in the paper and had the witness acknowledge its correctness. The contents then of the writing went to the jury, notwithstanding its formal exclusion.

There was no such *surprise* as to the testimony of this witness as would warrant the court in granting a new trial. In the first place it requires considerable "stretch of the imagination" to detect any substantial discrepancy between the contents of the written statement of Schreiner and his testimony given at the trial; and again the defendant can not be surprised that the plaintiff introduces evidence in support of his case as

made by the pleadings, even though such testimony be false. *Bragg v. City of Moberly*, 17 Mo. App. 221.

In short, we conclude that the matters testified to by the witnesses make a case for plaintiff; the issues were fairly tried and submitted on correct declarations of law; and no substantial error being found in the record, the judgment will be affirmed. All concur.