THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
v. H. P. BEETS.

No. 14,794   (89 Pac. 683.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Duty to Maintain Stock-yards in Reasonably Safe Condition.* Where a common carrier of live stock provides stock-yards at its stations for the purpose of receiving stock for shipment it is the duty of such carrier to keep its yards in a reasonably safe condition, and a failure to do so is negligence.

2. ——— *Defective Stock-yards—Injury to Live Stock.* When a shipper of live stock arranges with the station-agent of a railroad company to ship two car-loads of cattle, and afterward in pursuance of such arrangement places the cattle in the company's stock-yards at such station for shipment, and without fault on his part one entire side of the pen containing his cattle falls down, because the posts have rotted off, and the cattle escape and are injured, the company is liable for any damages sustained thereby.

3. PRACTICE, SUPREME COURT—*Question Not Presented to Trial Court.* This court will decline to consider a question presented in a brief if it appears from the record that such question was not presented to the district court.

4. ——— *Misleading Instruction—Error Cured by Special Finding.* Where an instruction is given which tends to mislead the jury, the error, if there be any, will be cured by a special finding which clearly shows that the instruction was properly understood.

5. RAILROADS—*Notice of Claim for Damages—Injury before Transportation Began.* The live-stock shipping contract attached to defendant's answer examined, and the provisions thereof relied upon by defendant held to be immaterial, because they relate to damages received during transportation only.

Error from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed March 9, 1907. Affirmed.

*L. F. Parker,* and *Pratt, Dana & Black,* for plaintiff in error.

*Frank M. Sheridan,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced by H. P. Beets in the district court of Miami county to recover damages sustained by cattle escaping from the stock-pens of the St. Louis & San Francisco Railroad Company at the station of Hillsdale. The plaintiff recovered the sum of $214.24, and the defendant brings the case here for review.

The plaintiff resides about two and a half miles from Hillsdale, and has been engaged for several years in the business of buying and shipping cattle to Kansas City. On June 7, 1904, having forty-six fat cattle ready to ship, he requested the agent at Hillsdale to furnish cars for such shipment, and upon the promise that they would be supplied proceeded with arrangements to load the cattle. The railroad company had stock-pens and the usual arrangements for loading stock at that station. Beets placed his cattle in the stock-pens, and while away with his team after hay to be placed in the cars the fence on one side of the enclosure fell down and the cattle escaped. They were very fat, and had been kept in dry lots, on dry feed. They were at large several hours after their escape, and had access to green feed. This gave them the scours, causing a shrinkage in weight of about forty pounds per head, and otherwise depreciated their value. The stock-pens had been standing several years, and the posts had rotted off at the ground, which weakened the fence so that it was easily pushed over. Beets gathered up the cattle and loaded them, after which, and before the train left the station, live-stock shipping contracts were signed, containing the usual limitations in favor of the carrier and the customary free transportation to the shipper. It is claimed that the provisions of this contract relieve the railroad company from liability. The parts relied upon read:

"That as a condition precedent to a recovery for any

damages for delay, loss or injury to live stock covered by this contract the second party will give notice in writing of the claim therefor to some general officer or the nearest station-agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated; and that a failure fully to comply with the provisions of this clause shall be a bar to the recovery of any and all such claims."

"That no suit or action against the party of the first part, for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity, unless such suit or action be commenced within six months next after the cause of action shall accrue, and should any suit or action be commenced against the first party after the expiration of six months the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

These provisions relate to and cover only such injuries as occur while the stock is in transit, and do not apply to damages sustained either before transportation begins or after it has ended. (*Railway Co. v. Poole*, 73 Kan. 466, 87 Pac. 465; *Cornelius v. Railway Co.*, 74 Kan. 599, 87 Pac. 751.) The damages in controversy were sustained on account of deficient stock-pens, and are wholly disconnected from the transportation of the stock in the defendant's cars or over its railroad. The answer of the railway company, so far as it relates to this live-stock shipping contract, may therefore be regarded as immaterial.

The remainder of the defendant's answer consists of a general denial and an allegation of contributory negligence. The issues made by these defenses were fully presented to, and determined by, the jury, and the verdict cannot be disturbed unless material error occurred during the trial.

Complaint is made that the court erred in its instructions, most of which, however, relate to the shipping contract and the questions raised on account thereof, but in the view we have taken they need not be considered. Complaint is also made of an instruction which reads:

"Where a railroad company provides stock-yards for the purpose of receiving stock to be shipped over its line it is the duty of such company to see that said yards are kept and maintained in a reasonably safe condition, so that the same will retain and hold ordinary cattle under ordinary circumstances; and, if the company provides such yards for a shipper of cattle desiring to ship over its line, and permits him to place his cattle in such yards or corral for the purpose of shipping with the consent of the company, then if said corral or stock-yard is so defective as not to be reasonably safe under ordinary circumstances such company would be liable to such shipper or stock owner for whatever damages, if any, he sustained, or was occasioned to said cattle by reason of the negligence of the defendant company, if any, in allowing. said stock-yards to be in a defective condition, such as not to be reasonably suitable and reasonably safe for the purpose of receiving and retaining such cattle."

This, we think, fairly states the law applicable to the case. In the case of *Cooke v. The K. C., Ft. S. & M. R'y Co.*, 57 Mo. App. 471, where the facts and legal questions involved were substantially the same as here, an instruction practically the same as the above was approved; and the cases of *Mason v. The Missouri Pacific Ry. Co.*, 25 Mo. App. 473 and *McCullough v. The Wabash Western Ry. Co.*, 34 Mo. App. 23, hold practically the same way. The specific objection here made to this instruction is that no evidence of negligence was produced. We think there is ample evidence of negligence to sustain the verdict. The stock-yards had been in use many years; the posts had rotted off at and near the ground—not a single post only, but one entire side of the yard. This place was kept as a receiving pen for shippers of all kinds of live stock,

Railroad Co. v. Beets.

during all the years since it was built.   These facts, unexplained, justify the inference of negligence.

When common carriers of live stock provide pens, chutes and other appliances for loading and unloading stock at their shipping stations, and invite and require shippers to use them, it is the duty of such carriers to keep such pens and loading appliances in a reasonably safe condition.   It is not the duty of shippers to discover defects therein and notify the carrier thereof. On the contrary, a shipper has a right to act upon the assumption that his stock will be safe therein.   (*Potts v. The W., St. L. & P. Ry. Co.*, 17 Mo. App. 394; *Louisville, Cincinnati & Lexington Railroad Co. v. Hedger*, 72 Ky. 645, 15 Am. Rep. 740, 13 Am. Law Reg. 145.)

Much of the argument for the plaintiff in error is devoted to a clause in the shipping contract attached to its answer, which reads:

"And the shipper hereby releases and does waive and bar any and all causes of action for any damage whatsoever that has accrued to the shipper, by any written or verbal contract prior to the execution hereof concerning said stock or any of them."

This clause and argument we decline to consider, for the reason that the question was not presented to the district court.   This contract contains more than twenty conditions and clauses in fine print and difficult to read.   A copy is attached to the answer as an exhibit, and possibly under our code of pleading this alone would be sufficient to require court and counsel to take notice of its entire contents; but the pleader went further: he undertook to state specifically wherein the plaintiff had failed to comply with the contract and had thereby forfeited his right to recover. . This would naturally lead the court to assume that these specific averments constituted all that were relied upon.   The defendant requested the court to give several special instructions, but none of them referred in any way to this clause.   The court gave lengthy instructions, evi-

dently intending to cover every question presented, but this matter was entirely overlooked. It seems quite clear from the record that this matter was not presented to the district court. It is not the province or purpose of this court to review questions not decided by the trial court.

Another instruction given by the court is challenged by plaintiff in error. It reads:

"If you find for the plaintiff, and that he is entitled to recover in this action, the measure of his damages should be the actual loss occasioned by the injury to the cattle, as shown by the evidence in the case, together with any expenses and outlay, if any is shown, that plaintiff suffered by reason of having to get said cattle back to the stock-yards for shipment; and in estimating the loss and damage, so far as the stock is concerned, you may take into consideration the value of the cattle before escaping from the stock-yards and their lessened value, if any, shown by the evidence, after escaping from the stock-yards."

It is contended that this instruction directs the jury to consider the value of the cattle at Hillsdale in estimating the damages sustained, instead of at Kansas City. We do not think the instruction open to this construction. All the evidence as to value was confined to the market value at Kansas City. There was nothing in the case to cause the jury to think of value at any other point. All question, however, as to the jury being misled is set at rest by their special finding, which expressly states the value as "on the market at Kansas City."

It is further urged that as the jury found the damage to the cattle on the Kansas City market to be $101.20, and the general verdict was $214.24, it must have been misled by this instruction. But there were two elements of damages presented. First, shrinkage in weight; second, depreciation in value because buyers would think, from appearances, that the cattle had not been fattened on dry feed exclusively. The jury gave the shrinkage in pounds, and the general depreciation,

as above stated.  These two amounts aggregate the sum stated in the general verdict.

This disposes of all the questions presented.  We are unable to find any material error, and the judgment of the district court is affirmed.