No. 19,495.

THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant and Appellee,* v. GEORGE THEIS, Jr., *Appellee and Appellant,* et al.

SYLLABUS BY THE COURT.

1. INTERSTATE SHIPMENT—*Action for Balance Due on Rates—Cross-demand Pleaded by Defendant Not Available as a Set-off.* Section 102 of the civil code allowing cross-demands notwithstanding the statute of limitations is not applicable to a set-off for damages where a special contract between the parties prescribed conditions precedent to a claim for damages and provided that a failure to comply with those conditions would bar a recovery.

2. SAME— *Schedules of Interstate Rates as Filed, Valid.* Interstate Commerce Commission Joint Stock Cattle Tariff, No. 3269, effective May 2, 1905, participated in by twenty-five railroads, including the plaintiff, and filed and approved by the Interstate Commerce Commission, examined and held to conform to section 6 of the interstate commerce act as amended by the act of June 29, 1906 (Part 1, 34 U. S. Stat. at Large, ch. 3591, § 2, p. 586) requiring plainness of statement and

printing so far as it related to carload rates of cattle from Groom, Tex., to Meade, Kan.

3. SAME—*Damages on Previous Shipment Not a Proper Set-off.* Defendant shipped twenty-seven carloads of cattle from Groom, Tex., to Meade, Kan., over the lines of plaintiff and connecting carriers. The rate charged was $35 per carload. The lawful rate was $47.50 per carload. In an action to recover the undercharge of $12.50 per car, a set-off can not be allowed for damages on another shipment of cattle where such other shipment was made under a contract prescribing conditions precedent to the allowance of damages when those conditions were disregarded.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed November 6, 1915. Reversed.

*Paul E. Walker,* and *Luther Burns,* both of Topeka, for the plaintiff.

*H. C. Sluss,* of Wichita, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: The Chicago, Rock Island & Pacific Railway Company brought this action in the district court of Sedgwick county to recover from the defendant, George Theis, jr., the sum of $337.50 and interest on an interstate shipment of twenty-seven carloads of cattle from Groom, Tex., to Meade, Kan.

The cattle were shipped on October 24, 1909. The rate paid was $35 per carload. The railroad company grounds its action on the contention that the lawful rate was $47.50 per carload, and this action to recover the undercharge was filed October 22, 1912.

One of the defenses to this action was a set-off for damages on another shipment of twelve carloads of cattle from Texhoma, Tex., to Meade, Kan., on October 5, 1910, being $1 per head on four hundred and twenty-nine cattle on account of the plaintiff's delay of eight hours in setting the cars at the unloading chutes after the cattle already had been without feed and water during a twenty hours' journey from Texhoma to Meade.

The district court and jury allowed both the plaintiff's claim and the defendant's set-off, which thus resulted in a judgment for defendant for the difference between these amounts.

Both parties appeal. The plaintiff assigns error in the allowance of defendant's set-off. Defendant complains because the court overruled his demurrer to plaintiff's evidence.

1. Was the claim for damages to another shipment of cattle in 1910, from Texhoma to Meade, a proper set-off to the claim for the undercharge on the shipment from Groom to Meade in 1909?

The Texhoma-Meade shipment was made on a characteristic interstate shipping contract in which it was agreed that before any suit for damages should be brought for loss or injuries to the cattle the shipper should give written notice to "some general officer, claim agent or the station agent" of the plaintiff, not later than ninety days after the date of the loss or injuries, and a failure to do so should be a bar to a recovery. It also provided that if the claim for damages was occasioned by detention of the live stock or delay in transportation, the shipper should promptly notify the carrier through some general officer, claim agent or station agent, or the agent at destination, before the removal of such stock from the place of destination, and that a written notice should be served within one day of the delivery of the live stock at its destination, so that the claim could be fully and fairly investigated. The contract also stipulated that a failure to comply with these provisions should bar a recovery. By another provision it was agreed that there should be no recovery on this shipping contract unless an action was brought within six months.

This Texhoma-Meade shipment was made on October 5, 1910. No claim for damages was made under the provisions of this shipping contract. It was set up, so far as the record shows, for the first time in answer to plaintiff's petition in 1912. By the terms of the shipping contract, this was a bar to a recovery. (*Kalina v. Railroad Co.*, 69 Kan. 172, 76 Pac. 438; *Railway Co. v. Means*, 71 Kan. 845, 80 Pac. 604.) The conditions precedent to a claim for damages embodied in the contract were reasonable, and a failure to comply with them is fatal to a recovery. (*Ray v. Railway Co.*, 90 Kan. 244, 133 Pac. 847; *Watt v. Railway Co.*, 90 Kan. 466, 135 Pac. 600; *Mo., Kans. & Tex. Ry. v. Harriman*, 227 U. S. 657.)

It is suggested that the trial court was constrained to let in

this defense of set-off by section 102 of the civil code. That section reads:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other or by reason of the statute of limitations; but the two demands must be deemed compensated so far as they equal each other."

But that code section is not pertinent here. That a set-off may be made under the code, notwithstanding the statute of limitations, can not affect the reasonable provisions of a contract fixing conditions precedent to a recovery and a breach of which bars recovery for an interstate shipment governed by federal law and rules of interstate transportation pertaining thereto.

In *Mo., Kans. & Tex. Ry. v. Harriman*, supra, it was said:

"The liability sought to be enforced is the 'liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack amendment of the Hepburn act of June 29, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed is a federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation. (*Adams Express Co. v. Croninger*, 226 U. S. 491; *Michigan Central Railroad v. Vreeland*, 227 U. S. 59.) . . . Such stipulations have been sustained in insurance policies [and] . . . bills of lading. . . . The provision requiring suit to be brought within ninety days is not unreasonable." (pp. 672, 673.)

It is contended that the damages to defendant's cattle did not arise under the contract of shipment, but were occasioned by the delay in setting the cars for unloading after the transportation services were terminated. We think not. Railroad transportation not only includes the physical act of moving the property from one place to another, but all the necessary incidents attending the receipt and delivery of the property. It is on this theory that transportation companies are required to furnish terminal facilities, such as loading and unloading chutes, stockyards and water for cattle. (*Covington Stockyards Co. v. Keith*, 139 U. S. 128.)

The case of *Railroad Co. v. Beets*, 75 Kan. 295, 89 Pac. 683, was different. There the damages were occasioned by a defective stock yard, whereby the cattle escaped. It is familiar

Railway Co. v. Theis.

law that a railroad's liability as a carrier only attaches a reasonable time before the physical act of transporting the property begins, and terminates in a reasonable time after the transportation has been completed. At all other times its responsibility for property upon its premises which is intended for transportation or which has been the subject of transportation is that of a warehouseman. But until cattle are unloaded the railroad's relation to the property is clearly that of a carrier, and its responsibility in such case is governed by the shipping contract.

2. The appellee contends that the demurrer to plaintiff's evidence should have been sustained. On this point it is said that the legal rate from Groom, Tex., to Meade, Kan., was $35 per car. Excerpts from the interstate tariff are set forth in the briefs, and the tariff itself is before us. From these it is easy to see how the error was made in the original rate quoted. On page 14 of the tariff (I. C. C. No. 3269, May 2, 1905), on which are listed over a hundred of plaintiff's stations and cattle rates, is one item:

| "To C. R. I. & P. Ry. Points. | From Group 1. (See page 15.) |
|---|---|
| ................................. | ................................. |
| Meade, Kan. | 35.00 |
| ................................. | ................................." |

No points of origin are stated. Turning, however, to "Group 1" as instructed by this schedule, we find on the next page of the tariff a list of the points in that group. It reads:

"GROUP 1 POINTS.

| Stations. | Railroad Location. |
|---|---|
| ................................. | ................................. |
| Groom, Tex. | C. R. I. & G. (Amarillo Division.) (See note 3.) |
| ................................. | ................................. |

"Note 3. Minimum rates from Amarillo Group stations on F. W. & D. C. Ry., and Amarillo Division, C. R. I. & G. Ry., to Plains, Kansas, and east, $47.50 per 36-foot car."

School District v. DeLano.

The record shows that Groom was located in the Amarillo division of group 1, and it therefore becomes too plain for cavil that the lawful rate from Groom to Meade, which is east of Plains, was $47.50 per carload.

Counsel for appellee criticizes the tariff arrangement, and reminds us that the interstate commerce act provides that the tariffs shall plainly state the rates, etc. The movement of this shipment was over the Chicago, Rock Island & Gulf Railway from Groom to Amarillo; thence by the Fort Worth & Denver City Railway to Dalhart, and thence by the plaintiff's railroad to destination. Some twenty-five railroad companies participated in this tariff. It is in the interest of the public and makes for efficient railroad service that they should do so. The statutory provision requiring simplicity in railroad tariffs is satisfied when it is made as plain as a subject inherently complex will permit. Tariff schedules and their arrangement with reference to simplicity and precision follow the outlines prescribed by the Interstate Commerce Commission, and must meet the approval of that tribunal. Ordinarily the courts make no mistake in deferring to its expert judgment touching the best methods of complying with the statutory mandate as to plainness and lucidity in the arrangement of tariff schedules.

It follows that this cause must be reversed and remanded with instructions to set aside the judgment, to disallow defendant's set-off, and to award judgment for plaintiff as prayed for in its petition.

It is so ordered.