LANCASTER et al. v. PITZER.    (No. 964.)

(Court of Civil Appeals of Texas. El Paso. April 17, 1919. Rehearing Denied May 1, 1919.)

1. CARRIERS ⊙⇒215(2) — LIVE STOCK—NEGLIGENCE.

A railroad was liable for damages, where plaintiff, whose hogs when being driven to the railroad's pens for shipment, ate a poisonous substance used in dipping vats on the land of a third party near the pens, though the railroad had no control, and did not know that the poisonous substance was there.

2. TRIAL ⊙⇒215—INSTRUCTIONS—MEASURE OF DAMAGES.

In action against a carrier for damages to hogs, it was not necessary to give a charge upon the measure of damages, where the cause was submitted upon special issues.

3. APPEAL AND ERROR ⊙⇒1068(4)—HARMLESS ERROR—INSTRUCTIONS.

In action against carrier for damages to hogs, where there could not have been any other proper verdict than that returned, it was immaterial that the court erred in its charge upon the measure of damages.

Appeal from District Court, Taylor County; Joe Burkett, Judge.

Suit by S. A. Pitzer against J. L. Lancaster and Pearl Wright, receivers of the Texas & Pacific Railway. From judgment for plaintiff, defendants appeal. Affirmed.

J. M. Wagstaff, of Abilene, for appellants.
Ben L. Cox and Sayles & Sayles, all of Abilene, for appellee.

HARPER, C. J.  This suit is for damages against the receivers of the Texas & Pacific Railway Company.

In substance plaintiff alleges that he drove 81 head of hogs to defendant's pens for shipment to Ft. Worth; that while being held near the loading pens they ate a poisonous

substance which defendants had negligently permitted to be in and about its pens, which killed some of them, and the others were caused to get sick and unfit for market; that upon arrival at Ft. Worth it became necessary to employ a veterinarian to treat them and to feed and care for them at certain expense, etc.

The receivers alleged that, if the hogs were injured or killed by poison, it was not by reason of their negligence, but upon account of the negligence on the part of L. A. Miller, who ran a quarantine pen near the loading pens, which quarantine pens were under the direction of the life stock sanitary board of Texas, and that the said Miller left the poisonous substances, if any, in and around his premises where they ate it. They then made Miller a party to the suit, and asked judgment over against him if they were held liable, as was provided by the lease from the receivers to Miller.

The cause was submitted to a jury upon special issues, and upon their verdict judgment was entered for plaintiff against the receivers and for the receivers over against Miller for same amount. From which the receivers have appealed.

The first and second assignments charge that there is no evidence to show that the defendants, receivers, were negligent in permitting the hogs to get the poison from the dipping vats, but that the undisputed evidence is to the effect that defendants had no control of the vat or the handling of the poison, and that they had no knowledge of the poison being on the ground in and around the stock pens.

The case was submitted by special issues, and the jury found: First. The number of hogs that died. Second. The number that got sick. Third. That poison from the dipping vat caused the death and sickness. The fourth is: "If you answer that poison from the dipping vat caused their death and sickness, then where did said hogs get this poison? Answer: In and around stock pens." Fifth. That the receivers were negligent in permitting the poison in and around the pens. Sixth. That by the exercise of ordinary care they could have known that the poison was scattered about the pens and adjacent thereto.

The undisputed facts show that, for the purpose of shipping them to Ft. Worth, the plaintiff drove his hogs up to the stock pens of the Texas & Pacific Railway Company, then in the custody and control of receivers;

that upon arriving at the pens the men in charge of the hogs found the gate locked; that one of them went for the key, and while gone, about 15 minutes, the hogs were permitted to stray into an adjacent inclosure where a dipping vat was being conducted for dipping cattle for ticks with an arsenic solution. This dipping vat was upon premises not under the control or management of the receivers, but owned and operated by one Miller under the supervision of the live stock sanitary board of Texas; that when they were observed by the herders to be rooting about and eating something they were driven out immediately. There is other testimony that the hogs were rooting around the stock pens and in the stock pens. There is no evidence in this record that the poisonous substance was caused to be in and about the pens by the receivers or their agents, nor is there any evidence that they knew of its being there.

The question presented by these assignments is: Is the defendant liable because the poison was there, or by the exercise of ordinary care, as found by the jury, they could have known that it was there?

[1] We think they are properly held liable under the rule that they are required to keep suitable pens for the shipment of cattle (Railway Co. v. Trawick, 80 Tex. 271, 15 S. W. 568, 18 S. W. 948; Railway Co. v. Harman, 91 Va. 601, 22 S. E. 490, 44 L. R. A. 289, 50 Am. St. Rep. 855, and note), whether they put it there or knew of its being there or not.

[2] The third and fourth are that the court erred in its charge upon the measure of damages.

It is not necessary to give a charge upon the measure of damages in this case, having been submitted upon special issues. Railway Co. v. Wall, 165 S. W. 527.

[3] Appellant does not contend that a wrong verdict was rendered; in fact, he did not controvert the amount sued for, as testified to by plaintiff, as being his losses. The proof is positive as to the number of hogs that died and their value, and that certain sums were expended in caring for the sick ones, and that such sums were necessary and reasonable; so there could have been no other proper verdict and judgment no matter what charge the court might have given upon the measure of damages.

Finding no error in the record, the assignments are overruled and the cause affirmed.