PANHANDLE & S. F. RY. CO. v. ANDREWS.*
(No. 2569.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 9, 1925. Rehearing Denied Jan. 6, 1926.)

1. Carriers ⬤⟿18(5)—Pleading held not to allege violation of law against discrimination.

Where, in suit against railroad for damages to shipment of cattle, plaintiff alleged they were not shipped on train on which defendant's agent represented they would be, at time he told plaintiff to put them in pens, held such statement

did not allege contract stipulating particular time of shipment, train, and market, in violation of law against discrimination.

2. Pleading ⬤⟿11—Weight of cattle damaged in shipment need not be set out in petition.

In petition in suit against railroad for damages to cattle, statement of weight of cattle at initial point and destination was statement of evidence and unnecessary.

3. Carriers ⬤⟿205—Duty in transporting live stock stated.

Railway company is required, both by statute and common law, to receive and transport live stock with reasonable care, diligence, and dispatch, in view of Act Cong. Feb. 28, 1920, §§ 436–438 (U. S. Comp. St. Ann. Supp. 1923, § 8604a).

4. Carriers ⬤⟿227(1)—Pleading in suit for damage to cattle in shipment need not describe trains in detail.

Plaintiff, in suit against railroad to recover for damage to cattle in shipping, may allege that several trains passed through shipping point while cattle were ready for loading which refused to pick them up, and need not describe trains, engine, and car numbers, name employés, or give time of arrival.

5. Carriers ⬤⟿227(1)—In suit for damages to cattle in shipment, held there was no demand for double damages.

Where plaintiff in action against railroad for damages to cattle in delayed shipment claimed loss because of treatment given cattle, and because market dropped before their arrival at destination, but after they should have arrived, held plaintiff did not sue for double damages.

6. Carriers ⬤⟿210—No duty on cattle shipper to repair pens of railroad.

It is duty of carrier, engaged in shipping live stock for hire, to provide suitable pens for use in loading and unloading such live stock, and no duty rests on shipper to repair gates and pens and put them in condition for holding cattle.

7. Carriers ⬤⟿227(3)—Where there were several acts of negligence, damage for each act need not be alleged and proved.

Where cattle shipper's damage was occasioned by railroad's muddy pens of defective construction, coupled with unreasonable detention therein, rough handling en route and late arrival at destination, he was not required to allege and approve what part of total damage was result of each act of negligence charged.

8. Appeal and error ⬤⟿1170(3)—Pleading ⬤⟿ 180(3)—Admission of supplemental petition in action for damaged shipment of cattle held proper, and not ground for reversal.

In suit against railroad for damages to shipment of cattle, defendant's objection to supplemental petition was properly overruled, since it set up no new cause of action and did not injure defendant, and, under rule 62a, violation of technical rules of pleading is not ground for reversal, where no injury is shown.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction February 24, 1926.

**9. Carriers ⬅➡230(7)—Instruction concerning timely liability attached in cattle shipment held proper.**

In suit against railroad for damages to shipment of cattle, instruction that railroad's liability as common carrier attached when shipper had properly prepared shipment, and it had been delivered to railroad and accepted, *held* proper, even though written contract between parties imposed duty on shipper to keep cattle secure in pens and load them, because by express provision of Act Cong. Feb. 28, 1920, §§ 436–438 (U. S. Comp. St. Ann. Supp. 1923, § 8604a) shipper's rights did not depend on subsequent issue of bill of lading.

**10. Carriers ⬅➡228(1)—After Carmack Amendment, carrier's negligence presumed when prima facie case made.**

The Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), by re-establishing common-law rule of liability on interstate shipments of live stock, relieved carrier of liability as insurer, but prima facie case is made by showing delivery in good condition and subsequent delivery after transportation in bad condition, and negligence of carrier is presumed when such prima facie case is made.

**11. Carriers ⬅➡108—Common-law rule of liability stated.**

Common-law rule of carrier's liability is that he is liable for all loss, destruction, or injury to goods, not occasioned by act of God or public enemy.

**12. Carriers ⬅➡230(7) — Charge placing burden of proving negligence on shipper held incorrect statement of law.**

Where defendant railroad, in suit on damaged shipment of cattle, objected to charge which placed burden on shipper to allege and prove defendant's acts of negligence, *held* such charge was too favorable to defendant, in view of Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), under which railroad's negligence is presumed when shipper shows damage in transit.

**13. Evidence ⬅➡505 — Expert testimony of shrinkage of cattle, caused by carrier's negligence, held admissible.**

In action against railroad on damaged shipment of cattle, testimony of expert witnesses as to extra shrinkage of cattle, due to defendant's negligence, *held* proper, and not subject to objection that it involved conclusions of law and fact.

Appeal from Gray County Court; T. M. Wolfe, Judge.

Suit by John V. Andrews against the Panhandle & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, Hoover, Hoover & Willis, of Canadian, and Studer & Studer, of Pampa, for appellant.

Chas. C. Cook, of Pampa, for appellee.

HALL, C. J. John V. Andrews sued the appellant, railway company, in the county court of Gray county to recover $223.51, total damages alleged to have been sustained by him upon a shipment of 75 head of cattle from Pampa, Tex., to Kansas City, Mo.. He alleges that on the morning of September 29, 1923, in pursuance of instructions from the defendant's agent, he placed his cattle in the company's stock pens at Pampa about 10 o'clock a. m., and that defendant did then and there agree, obligate, and contract with plaintiff to transport the same to destination with reasonable care, diligence, and dispatch; that defendant's agent at Pampa instructed plaintiff to place said cattle in said pens early on the morning of September 29th; that the defendant's agent accepted and received said cattle at said time to be shipped to Kansas City with reasonable care, diligence, and dispatch.

He further alleges that the pens were muddy, boggy, and in very bad condition; that it rained frequently during the day, and that the longer the cattle remained in the pens the worse they became; that while the cattle were in there the gates came off the hinges, and plaintiff's cattle were permitted to go into other pens, where they were mixed and mingled with the cattle of other parties; that his cattle remained in the pens without food or water for about 30 hours; that they could have been loaded into cars and started on their journey within two hours after being placed in the pens, but that defendant refused to load or permit them to be loaded, whereby the cattle were detained an unnecessary and unreasonable length of time, thereby causing them to lose extra flesh and weight and greatly depreciated in market value at destination; that said agent told plaintiff to put his cattle in the pens early on the morning of September 29th, and that there would be a train during the morning that would pick up his cattle in the morning or about the noon hour; that said pens were not properly drained; that several trains passed through the town of Pampa while said cattle were in said pens which could and should have picked up the cattle, but refused to do so; that his cattle were not loaded until about 4 o'clock p. m., on the 30th day of September, and after they had remained in the pens since 10 o'clock of the morning before without food or water; that, had said cattle not been detained in the pens for such unreasonable length of time, they would have arrived in Kansas City in time to have been sold on the Monday's and Tuesday's market following, but, by reason of delay in transportation and being detained in the pens, they arrived at destination at 6 o'clock p. m., on the 2d day of October, too late to be sold on that day's market; that they were placed on the market October 3d, and were sold at the average price of $5 per hundred for the calves and $4 per hundred for the cows, there being 25 calves and 50 cows in said

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

shipment, said amount so received not being their market value in said market at said time on Monday and Tuesday, being the 1st and 2d days of October, 1923, at destination; that said calves were worth on said market the average price of $5.50 per hundred; that said cows were worth the average price of $4.50 per hundred, being at least 50 cents per hundred pounds more than they were worth and were sold for at the time they were actually delivered and sold on said market; that there was a decline of 50 cents per hundred pounds in the market value of said cattle, and of such cattle generally, from the time they should have arrived and should have been delivered by defendant to plaintiff in Kansas City, if transported with reasonable diligence and speed, and not detained in said pens for said unreasonable length of time, and the time said cattle did arrive and were delivered to plaintiff, to plaintiff's damage in the sum of $265.92 by reason of the decline in the market of such cattle; that, by reason of said cattle being detained in said pens for said unreasonable length of time and in the condition said pens were in during said time, and by reason of being detained in the cars by reason of being transported to Kansas City without food or water, and being without said food or water while in said pens, plaintiff has been damaged in the further sum of $131.25, being the difference in the market value of said cattle at Kansas City, had they been transported with reasonable dispatch, and not been detained in said pens without food or water, and the value of said cattle in the condition they were when actually received at destination; that a reasonable time in which to transport said cattle from Pampa to Kansas City, after they were delivered in the pens at Pampa, is 28 to 36 hours, and that said time is a reasonable time to confine cattle in stock pens without rest, food, or water, and over that time, especially 80 hours, is an unreasonable time to hold cattle on the cars and in the pens, in order to transport them from Pampa to Kansas City.

Plaintiff alleges that he has been damaged in the aggregate sum of $397.17 on account of the decline in the market of said cattle, and their being held and detained in the pens for such an unnecessary and unreasonable time in the condition in which said pens were at said time, and alleges that defendant was negligent in permitting them to be placed in said pens and in not loading them on the cars, as it was in duty bound and agreed to do, and in not transporting them to Kansas City within a reasonable time after accepting them for shipment, and that plaintiff's damage is the direct and proximate result of the defendant's negligence and in the manner *alleged in this petition.

The case is submitted here upon 30 propositions, based upon 40 assignments of error contained in the motion for new trial.

[1, 2] The first proposition is that the petition is subject to demurrer because its allegations do not furnish any basis for calculating the damages, when it does not show the weights of the cattle, and because it seeks to recover on a contract to ship cattle at a particular time upon a particular train and in time for a particular market, in violation of the law against discrimination. The trouble with this proposition is that it is not sustained by the allegations of the petition. Plaintiff did not allege a special contract to ship his cattle at any particular time or on any particular train or for any particular market, and, as we read the pleading, there is no allegation which can be so construed. He says the agent told him when to put his cattle in the pens, and the agent certainly had authority to so instruct him. As a reason why he should put his cattle in the pens early in the morning, it is alleged that the agent told him that a train would be along that morning or about noon which would pick up his cattle. These statements fall far short of alleging a special contract of the nature described in the proposition. We know of no rule of law, and the appellant cites no case, which requires the plaintiff in suits of this character to allege the weights of the cattle at the initial point and at destination. He alleges that the loss on his cattle was at the rate of 50 cents per hundred, and gives the total loss. If the appellant desired to know how many pounds the cattle weighed, a simple mathematical calculation would have given the information. It is not improper to allege the weights of the cattle, but we think such an allegation is the statement of evidence, and unnecessary. T. & P. Ry. Co. v. Sherrod, 99 Tex. 382, 89 S. W. 956; Fort Worth & R. G. Ry. Co. v. Montgomery (Tex. Civ. App.) 141 S. W. 813; Chicago, R. I. & G. Ry. Co. v. Manby (Tex. Civ. App.) 207 S. W. 157; T. & P. Ry. Co. v. Turner, 1 Tex. Civ. App. 625, 20 S. W. 1008.

The case of Easton v. Dudley, 78 Tex. 236, 14 S. W. 583 does not hold otherwise. What is here said also disposes of the second proposition.

[3, 4] It is contended by the third proposition that the petition is subject to the special exception, because it alleges that several trains passed through Pampa while the cattle were in the pens which could have picked up the cattle but refused to do so, and further fails to specify what time the trains arrived, what sort of trains they were, how they could have taken the cattle, the persons in charge of the trains, and facts and circumstances that would show they could have taken the cattle. This contention is without merit. Plaintiff sued the defendant upon its common-law liability. A railway company is required, both by statute and the common law, to receive and transport live stock with reasonable care, diligence, and dispatch.

Act of Congress, Feb. 28, 1920, c. 91, §§ 436–438 (U. S. Comp. Stat. Ann. Supp. 1923, § 8604a); M., K. & T. Ry. Co. v. Webb, 20 Tex. Civ. App. 431, 49 S. W. 526. It was unnecessary for plaintiff to allege that several trains passed through Pampa while his cattle were in the pens, but proof of that fact would have been admissible as evidence of the defendant's violation of its common-law duty. There is no rule of pleading which would require the plaintiff, in a case of this kind, to describe the trains, the engine numbers, car numbers, give the names of the employés in charge of them, nor the hours when they arrived and departed, in order to entitle him to recover. The appellant cites no cases announcing any such doctrine, and we know of none. Certainly plaintiff would not be required to prove such facts in order to recover; and it is never necessary to allege facts which the pleader is not required to prove.

[5] The plaintiff did not sue for double damages, and the allegations are not subject to such construction.

[6] By the sixth proposition, it is insisted that, because plaintiff alleged that the gates came off of the hinges, resulting in his cattle being mixed with other cattle, there was raised an inference of contributory negligence on the part of the plaintiff. This contention is without merit. It is the duty of a carrier engaged in shipping live stock for hire to provide suitable pens for use in loading and unloading the live stock which it handles. No duty rested upon the plaintiff to repair the gates and pens and put them in condition for holding cattle, and he had the right to presume that the defendant would discharge this duty.

[7] The plaintiff, in a case of this character, is not required to allege separately the several items of damages with the amount of damage resulting from each alleged act of negligence. In the very nature of things he cannot know which particular act of negligence resulted in the greater damage. Where his cattle are delivered in muddy pens, which are so defectively constructed that his cattle are mingled with other cattle in adjoining pens, and where they are detained in the pens for an unnecessary length of time awaiting transportation, and where they are delayed and roughly handled en route, and by reason of all of such negligent acts reached their destination in a damaged condition, no law and no principle of justice would require him to allege or prove with certainty what part of the total damages was the result of either of the acts of negligence charged. M., K. & T. Ry. Co. v. Rich, 51 Tex. Civ. App. 312, 112 S. W. 114.

[8] The court did not err in overruling defendant's exception to the supplemental petition. It set up no new cause of action, and, even if it did, it is not shown that defendant was injured thereby. Under rule

278 S.W.—31

62a, a violation of technical rules of pleading is not ground for reversing a judgment where no injury is shown.

[9] The case was submitted to the jury upon a general charge, and complaint is made of this paragraph as being misleading, confusing, and vague, since it implies that, when the shipper has delivered the cattle into the stock pens, the railroad company alone is responsible for what occurs thereafter, because under the law, the written contract that was in evidence in the case imposed the duty upon the shipper to exercise ordinary care to prevent injury to the cattle and to keep them secure in the pens and to load them on the cars:

"You are charged that the liability of the railway company as a common carrier attaches whenever the shipper had done all that is required of him to prepare his property for shipment and had delivered the same to the railway company for transportation, and it has been accepted."

This is a clear and correct statement of the law applicable to cases of this character. I. & G. N. Ry. Co. v. Dimmit County Pasture Co., 5 Tex. Civ. App. 186, 23 S. W. 754; East Line & R. R. Ry. Co. v. Hall, 64 Tex. 615. The fact is not controverted that plaintiff drove his cattle into defendant's stock pens as directed by its station agent. As before stated, no duty rested upon plaintiff to prepare or repair the stock pens and make them suitable for the retention of his cattle, nor was he under any obligation to care for them while in the defendant's possession and under its control. By express provision of the federal statute, supra, his rights did not depend upon the subsequent issue of a bill of lading. While the federal law contemplates that the carrier shall issue a bill of lading to him, it expressly provides that the failure to do so does not jeopardize his rights. G., H. & S. A. Ry. Co. v. Jackson (Tex. Civ. App.) 37 S. W. 255; San Antonio & A. P. Ry. Co. v. Chittim (Tex. Civ. App.) 135 S. W. 747; M., K. & T. Ry. Co. of Tex. v. Rogers (Tex. Civ. App.) 141 S. W. 1011; Panhandle & S. F. Ry. Co. v. Vaughn (Tex. Civ. App.) 191 S. W. 142; G., C. & S. F. Ry. Co. v. Culwell (Tex. Civ. App.) 216 S. W. 457; Lancaster v. Pitzer (Tex. Civ. App.) 211 S. W. 313.

[10] The defendant has assailed the court's charge in several particulars, which we think are all without merit. It tendered eight special charges, and the court gave them all except its peremptory instruction. The jury was instructed that the defendant was not bound to transport plaintiff's cattle by any particular train, or in time for any particular market, and was only bound to the exercise of ordinary care and diligence. The jury was further instructed that plaintiff could not recover if he was guilty of contributory negligence on Saturday night in failing to have his

cattle ready for shipment. It appears from the evidence that one car was loaded that night, but that plaintiff's other cattle were not loaded on account of the muddy condition of the pens, and because the gates had come off of their hinges and his cattle had become mingled with other cattle, and it was impossible to separate them that night. The cattle had been ready for shipment all day, while defendant's trains were passing, and defendant's agent had knowledge of that fact. That the court's charge clearly embodies the law applicable to this case is shown by the following decisions: St. Louis & S. F. Ry. Co. v. Beets, 75 Kan. 295, 89 P. 683, 10 L. R. A. (N. S.) 571, and note; H. & T. C. Ry. v. Trammell, 28 Tex. Civ. App. 312, 68 S. W. 716; T. & P. Ry. Co. v. Turner (Tex. Civ. App.) 37 S. W. 643; Red River T. & S. Ry. Co. v. Eastin, 39 Tex. Civ. App. 579, 88 S. W. 530; Fort Worth & D. C. Ry. Co. v. Waggoner National Bank, 36 Tex. Civ. App. 293, 81 S. W. 1050; and Norfolk & W. Ry. Co. v. Harman, 91 Va. 601, 22 S. E. 490, 44 L. R. A. 292, 50 Am. St. Rep. 855, which holds that a railway company becomes liable as a common carrier from the moment it directed that the cattle be placed in the stock pens preparatory for shipment, and where they are placed therein with the knowledge and consent of the railway company's agents without any express directions. Lancaster v. Tudor (Tex. Civ. App.) 222 S. W. 990, is a case involving an intrastate shipment over two different roads, and is therefore not within the provisions of the federal law, and the rule declared has no application to this case. The effect of the Carmack Amendment and subsequent act by Congress relating to interstate commerce is to re-establish the rule of the common law with reference to interstate shipments of live stock. Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Lysaght v. Ry. Co. (D. C.) 254 F. 351; Nabors v. Colorado & S. Ry. Co. (Tex. Civ. App.) 210 S. W. 276, and authorities cited.

[11] The common-law rule as to the carrier's liability is that he is liable for all loss or destruction of, or injury to, such goods not occasioned by the act of God or public enemy; therefore, where the loss is not due to the excepted causes, proof of negligence is immaterial, and the carrier cannot escape liability by proving reasonable care and diligence. The effect of the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa) is to relieve the carrier of liability as an insurer

of goods delivered to it for transportation; but a prima facie case is made by showing a delivery in good condition and subsequent delivery after transportation in bad condition. Under the common-law rule, it is never necessary for the shipper to either allege or prove negligence on the part of the carrier in order to recover. Negligence is presumed when the prima facie case stated above is made by the shipper. Cudahy Packing Co. v. A., T. & S. F. Ry. Co., 193 Mo. App. 572, 187 S. W. 149, and authorities cited.

In Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 56 L. Ed. 516, proof of delivery of interstate shipment to the initial carrier, and of failure to deliver the same to the consignee, raises a presumption of negligence so as to give rise to the liability imposed by the Carmack Amendment, and casts upon the carrier the burden of proving that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract; and the carrier cannot contract against liability for negligence in an interstate shipment. Chicago, R. I. & G. Ry. Co. v. Core (Tex. Civ. App.) 176 S. W. 778; Ry. Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed. 690.

[12] Paragraph 8 of the court's charge, of which so much complaint is made in appellant's brief, was, under these rules, more favorable to appellant than it had the right to ask. The effect of that paragraph was to place the burden upon appellee to allege and prove acts of negligence and items of damage of which the Carmack Amendment and the decisions of the federal courts relieve it.

[13] The same questions are raised by several different propositions, and we do not therefore discuss them separately and in detail, but what has been said disposes of all the material contentions except the propositions which challenge the action of the court in permitting the plaintiff and Lockhart to express their opinions as to the amount of extra shrinkage of the cattle due to the acts of negligence charged. The witnesses showed that they were qualified to testify as experts, and, as such, could express their opinions upon that issue, and their testimony was not subject to the objection that it involved both conclusions of law and fact. Trout & Newberry v. Gulf, C. & S. F. Ry. Co. (Tex. Civ. App.) 111 S. W. 220; St. L., I. M. & S. Ry. Co. v. Dodson (Tex. Civ. App.) 97 S. W. 523; International & G. N. Ry. Co. v. Mudd (Tex. Civ. App.) 194 S. W. 960.

The judgment is affirmed.